# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2467

_____

Toni Duncan,                                    *
                                                *
    Plaintiff-Appellee,                  *
                                                *
    v.                                   *
                                                *
County of Dakota, Nebraska;                     *
James L. Wagner, Dakota County                  *   Appeal from the United States
Sheriff in his official capacity and            *   District Court for the
personally,                                     *   District of Nebraska.
                                                *
    Defendants,                          *
                                                *
Rodney Herron, in his official capacity         *
and personally,                                 *
                                                *
    Appellant.                           *

_____

Submitted: February 16, 2012
Filed: August 3, 2012
_____

Before GRUENDER, BENTON and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

Toni Marie Duncan sued her former employer, Dakota County, Nebraska, under 42 U.S.C. § 1983 for hostile-work-environment sexual harassment and constructive discharge in violation of the Equal Protection Clause of the Fourteenth Amendment.

She also sued Sheriff James L. Wagner and her supervisor, Chief Deputy Rodney G. Herron, in their individual capacities. The defendants moved for summary judgment. The district court granted summary judgment to Wagner, dismissing all claims against him. The district court denied the motions for summary judgment by the county and Herron on the basis of qualified immunity. Herron appeals. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

Duncan asserts this court lacks jurisdiction of this appeal because it involves factual disputes. A denial of qualified immunity is immediately appealable. *Jones v. McNeese*, 675 F.3d. 1158, 1160 (8th Cir. 2012), *citing Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007). A defendant may appeal a denial of qualified immunity only "to the extent that it turns on an issue of law." *Fields v. Abbott*, 652 F.3d 886, 889-90 (8th Cir. 2011). On appeal, this court will "resolve any factual disputes in [Duncan's] favor, and review the district court's denial of [Herron's] assertion of qualified immunity as a pure question of law." *Tuggle v. Mangan*, 384 F.3d 714, 719 (8th Cir. 2003). This court reviews such a denial de novo, viewing the evidence in the light most favorable to the nonmoving party. *Fields*, 652 F.3d at 890.

Duncan, a correctional officer, worked at the Dakota County jail from August 7, 2006 until November 4, 2007. She alleges that Herron – the chief deputy and jail administrator during her employment – created an "openly sexually charged environment." She claims Herron engaged in widespread sexual favoritism, had sexual relationships with subordinates, and allowed his favorites to come in late for work, sleep on the job, or get promoted.

Duncan knew that Herron had a child with one woman who worked at the jail and that another employee had become pregnant by him. She also knew that several other employees had sex with Herron: Alana Crutcher-Sanchez and Diana Moctezuma. According to Duncan, Herron harassed and intimidated employees who were not in his favor by ordering deputies to follow them and "set them up for arrest."

To support her claim of sexual favoritism, Duncan points to testimony and affidavits of several other female employees. Heather Skow stated that Herron attempted to kiss her and touched her inappropriately. She said Herron promised her an easier work schedule in exchange for stripping for him at work. Moctezuma said Herron made it clear she would receive benefits if she dated him and that he would retaliate against her if she did not comply. Herron admits having sex with Moctezuma and promoting her within two weeks after she was hired.

On her first day of work, Herron asked Duncan if she were married. When she said no, he told her to get a ring, because otherwise, "sheriff [Wagner] would be making advances on her." Wagner did ask Duncan to spend time with him outside of work four times; each time she declined and reported the proposition to Herron. (Duncan eventually requested that the court dismiss her complaint against Wagner in his individual capacity.) Herron, however, never asked Duncan out or to have sex with him.

Duncan claims that explicit emails, pornography, and sexual jokes were pervasive in the workplace. She never received explicit emails, but a female co-worker showed her a pornographic image once. She said her coworkers knew she disapproved of the emails and jokes. According to Duncan, employees who tolerated the sexual innuendo, pornography, and inappropriate emails received favorable treatment, or at least were not subject to retaliation.

Duncan testified that she believed promotions were based on something other than merit. In her deposition, she said she decided not to pursue an available promotion.

> **Q**: Were you on occasion asked if you were interested in advancement
> by your supervisors?

**Duncan**: Sheriff Wagner did say to me once . . . . by the way, Toni, Rod [Herron] and I were talking. We both agree we would like to see you in a supervisory position in the near future.

I just left and didn't say anything and never pursued it after that. There was one other occasion when the new jail was opening. John Gilles had been appointed sergeant for the day shift and in charge of getting operations up and running for the new facility. He told me that he would like to – that he was considering me to be his assistant on that shift, and I told him that I really wasn't interested in doing so, because I didn't feel it would be in my best interest.

**Q**: And why not?

**Duncan**: Again, my reputation was important to me. I know that a lot of people were aware that promotions were given for less than reputable reasons. I didn't want to be considered to be that type of person.

**Q**: So you were concerned that if you took or accepted a promotion that people in the jail would view you as being part of the crowd that partied?

**Duncan**: Or that I had done something inappropriate in order to receive it.

Qualified immunity "protects 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 931 (8th Cir. 2007), *citing Cox v. Sugg,* 484 F.3d 1062, 1065 (8th Cir.2007) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) (alteration in original). A qualified immunity analysis involves two questions: first, whether the facts demonstrate that Herron violated Duncan's statutory or constitutional rights. *Tuggle,* 348 F.3d at 720. If the facts, viewed most favorably to Duncan, show a violation of her statutory or constitutional rights, this court asks if the right violated was clearly established at the time. *Id.*

Denying Herron qualified immunity, the district court found that he "has a long history of conduct with employees that could be characterized as harassment. There is evidence from which a jury could infer that other employees received preferential treatment for engaging in sexual relationships with defendant Herron . . . [and that Duncan] was adversely affected by the favoritism."

Duncan argues that Herron's acts either amounted to widespread sexual favoritism, or created a sexually hostile work environment. This court has twice recognized the possibility of a sex-discrimination claim based on widespread sexual favoritism (but never found liability for it). In *McGinnis v. Union Pac. R.*, 496 F.3d 868, 874 (8th Cir. 2007), this court dismissed a claim of sexual favoritism when there was only a single allegation against a non-decisionmaker. In *Tenge v. Phillips Modern Ag Co.*, this court indicated its "general agreement" with the EEOC's statement that widespread sexual favoritism in the workplace may establish a hostile-work environment claim. 446 F.3d 903, 908-09 (8th Cir. 2006), *citing **EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism***, EEOC Notice No. 915-048 (Feb. 15, 1990). The EEOC's statement says that, to prove a sexual-favoritism claim, the conduct must be "sufficiently severe or pervasive 'to alter the conditions of [their] employment and create an abusive working environment.'" *Id.*, *quoting **Meritor Sav. Bank v. Vinson***, 477 U.S. 57, 67 (1986).

To prove a hostile-work-environment claim, Duncan must show (1) she was a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) that it "affected a term, condition, or privilege of employment;" and (5) that her employer knew or should have known of the harassment and failed to take appropriate remedial action. ***Sutherland v. Missouri Dep't of Corr.***, 580 F.3d 748, 751 (8th Cir. 2009), *citing **Alagna v. Smithville R-II Sch. Dist.***, 324 F.3d 975, 979 (8th Cir. 2003).

-5-

Whether expressed as a sexual-favoritism claim or a hostile-work-environment claim, at issue in this case is whether the complained-of conduct altered a term, condition, or privilege of Duncan's employment. Proving actionable harm is a high threshold. *Sutherland*, 580 F.3d at 751, *citing* **Duncan v. General Motors Corp.**, 300 F.3d 928, 934 (8th Cir. 2002). To determine whether the harassment affected a term, condition, or privilege of employment, this court considers "the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job." **Wright v. Rolette Cnty.**, 417 F.3d 879, 885 (8th Cir. 2005), *citing* **Henthorn v. Capitol Communications, Inc.**, 359 F.3d 1021, 1026 (8th Cir. 2004). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." **Breeding v. Arthur J. Gallagher & Co.**, 164 F.3d 1151, 1158 (8th Cir. 1999) (internal citations omitted). This court examines the totality of the circumstances to determine if the environment was sufficiently hostile. **Nitsche v. CEO of Osage Valley Elec. Coop.**, 446 F.3d 841, 846 (8th Cir. 2006). This analysis includes examining the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." **Duncan**, 300 F.3d at 934, *quoting* **Harris v. Forklift Sys., Inc.**, 510 U.S. 17, 23 (1993).

Based on the record, Duncan subjectively perceived Herron's conduct as abusive. Even so, to create an objectively hostile work environment, the harassment must be severe or pervasive. **Kratzer v. Rockwell Collins, Inc.**, 398 F.3d 1040, 1047 (8th Cir. 2005). Duncan must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult." **Sutherland**, 580 F.3d at 751, *quoting* **Harris**, 510 U.S. at 21. She must prove the conduct was "extreme in nature and not merely rude or unpleasant." **Nitsche**, 446 F.3d at 846.

Duncan cannot show that Herron's actions amounted to actionable harm that affected her employment. She chose not to apply for a promotion because she feared

damage to her reputation. Duncan has failed to identify any benefits or opportunities Herron denied her. She does not allege that any promotion available to her went to any employee who had a sexual relationship with Herron, or that the sergeant who was considering her for a promotion was engaged in sexual harassment. Her choice *not* to apply does not prove Herron's harassment was objectively severe, extreme or intimidating to alter a term, condition, or privilege of her employment. Although Herron's conduct was vile and inappropriate, it did not rise to the level of actionable hostile-work-environment sexual harassment *as to her*. Herron's conduct was not physically threatening or humiliating to Duncan. It did not unreasonably interfere with her work performance. This "conclusion is consistent with *Duncan* [*v. General Motors Corp.*] and other recent circuit cases requiring hostile work environment claims to satisfy the demanding standards established by the Supreme Court in order to clear the high threshold for actionable harm." ***Tuggle***, 348 F.3d at 722, *citing* ***Ottman v. City of Independence***, 341 F.3d 751, 760 (8th Cir. 2003); ***Alagna***, 324 F.3d at 980; ***Duncan***, 300 F.3d at 935; and ***Scusa v. Nestle U.S.A. Co.***, 181 F.3d 958, 967 (8th Cir. 1999). As a matter of law, Duncan "did not show a sexually harassing hostile environment sufficiently severe or pervasive so as to alter the conditions of her employment, a failure that dooms Duncan's hostile work environment claim." ***Duncan***, 300 F.3d at 935.

Because Herron did not violate Duncan's right to equal protection, this court needs not address the other prong of the qualified-immunity analysis: whether the law was clearly established that Herron's conduct violated Duncan's right to equal protection when the actions occurred. *See* ***Fields***, 652 F.3d at 894 (deciding not to address the clearly established prong after concluding that the plaintiff's rights had not been violated); ***Avalos v. City of Glenwood***, 382 F.3d 792, 801 (8th Cir. 2004) (declining to address whether the rights asserted by the plaintiff were clearly established at the time of the defendant's conduct after concluding the defendant did not violate the plaintiff's substantive due process rights); ***Tuggle***, 384 F.3d at 722 (finding the defendant's conduct did not rise to the level of actionable hostile-work-

environment sexual harassment in violation of the plaintiff's constitutional rights, and deciding not to address whether the law was clearly established).  Herron is entitled to qualified immunity on Duncan's claim.

\* \* \* \* \* \* \*

The judgment of the district court is reversed, and the case remanded for proceedings consistent with this opinion.

_____