# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 19-2462

———————————————

Ash-har Quraishi; Marla Cichowski; Sam Winslade

*Plaintiffs - Appellees*

v.

St. Charles County, Missouri

*Defendant*

Deputy Michael Anderson, a member of the St. Charles County Regional SWAT team

*Defendant - Appellant*

——————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————

Submitted: September 22, 2020
Filed: January 28, 2021

——————

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.

——————

BENTON, Circuit Judge.

Plaintiffs Ash-har Quraishi, Marla Cichowski, and Sam Winslade—reporters with Al Jazeera America news network—covered the protests after the death of

Michael Brown in Ferguson, Missouri. Deputy Michael Anderson, an officer in the St. Charles County police department, deployed a tear-gas canister at them while they were preparing for a live broadcast.

The reporters sued Anderson and St. Charles County under 42 U.S.C. § 1983. The district court denied qualified immunity to Anderson, permitting the reporters to proceed on their First Amendment, Fourth Amendment, and state-law battery claims. *Quraishi v. St. Charles Cnty.*, 2019 WL 2423321, at *8-11 (E.D. Mo. June 10, 2019). Anderson appeals under 28 U.S.C. § 1291.

I.

On August 9, 2014, amid public unrest and protests, St. Louis County requested assistance from the St. Charles County Regional SWAT Team. Anderson was a member of the SWAT Team.

On August 13, the three Al Jazeera reporters were covering the protests. For a live broadcast, they turned on their camera at 9:24 p.m., recording most of the summary-judgment facts. At least three other videos recorded the scene.

The SWAT Team approached the reporters as they prepared the live broadcast, a block and a half from the street where most of the protests occurred. Their video shows a calm scene. An unidentified officer begins shooting rubber bullets at them. They yell, identifying themselves as reporters. Anderson then deploys a single canister of CS gas (also known as "tear-gas"). It lands in front of the reporters. They move away from the camera, but can be heard talking in the background. An unidentified person walks past the camera. Other people stop in front it. The police do not fire at them. One reporter re-appears in front of the camera, is shot at, and leaves. Another person walks past the camera (possibly the same unidentified person as before). A second group poses in front of the camera, thinking they are on CNN. They talk to the camera for over two minutes.

Minutes later, police deploy another canister of tear-gas at men standing on the corner, several feet from the camera. Over a speaker, the SWAT Team appears to ask the reporters to "turn the spotlight off." SWAT Team members then lay down the lights and turn the camera lens toward the ground. The reporters re-appear. After speaking to the officers, they pack their equipment and leave.

The parties dispute some facts about the encounter. Anderson claims the reporters were told to disperse and turn off the lights but refused. He also claims he saw projectiles launched from the area of the bright lights. He says he had difficulty seeing what was going on. He believes there was an imminent threat to safety. He stresses that his sergeant ordered him to deploy the tear-gas.

Before the SWAT Team arrived, the reporters counter that their location was a calm scene. The videos support this. None records any orders to disperse. They also do not show any projectiles thrown from the reporters' area. They do not show orders to turn off the light before Anderson deployed the tear-gas.

II.

The threshold issue is this court's jurisdiction to hear Anderson's interlocutory appeal from the denial of qualified immunity. This court may review the district court decision "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). It may not review the "district court's determination about what factual issues are 'genuine.'" *Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 680 (8th Cir. 2019), *quoting Johnson v. Jones*, 515 U.S. 304, 313 (1995). Rather, this court is constrained to the legal question whether the particular facts support the reporters' claim that Anderson violated clearly established law. *See id.*

This court resolves factual disputes in the reporters' favor, reviewing the district court's denial of qualified immunity as a "pure question of law." *See*

***Duncan v. Cnty. of Dakota***, 687 F.3d 955, 957 (8th Cir. 2012).  This court reviews de novo a denial of summary judgment on qualified immunity grounds.  ***Id.***

Likewise, this court has limited jurisdiction to review state-law issues about Anderson's official immunity defense.  *See **Thompson v. Dill***, 930 F.3d 1008, 1013 (8th Cir. 2019).

III.

Qualified immunity shields Anderson from civil damages liability if his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *See **Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).  A two-step inquiry applies:  (1) whether the reporters have alleged facts to show a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *See **Smith v. Kan. City Police Dep't***, 586 F.3d 576, 580 (8th Cir. 2009).  This court may consider either prong first.  ***Id.***, *citing **Pearson v. Callahan***, 555 U.S. 223, 236 (2009).

The reporters have the burden to show that their right was clearly established at the time of the alleged violation.  *See **Davis v. Scherer***, 468 U.S. 183, 197 (1984).  *See also **District of Columbia v. Wesby***, 138 S. Ct. 577, 591 (2018) ("Tellingly, neither the panel majority nor the [plaintiffs] have identified a single precedent—much less a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.' "), *quoting **White v. Pauly***, 137 S. Ct. 548, 552 (2017) (per curiam).

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would [have understood] that what he is doing violates that right."  ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987).  The state of the law at the time of the alleged violation must give officials " 'fair warning' their conduct was unlawful."  ***Sisney v. Reisch***, 674 F.3d 839, 845 (8th Cir. 2012), *quoting **Hope v. Pelzer***, 536 U.S. 730, 741 (2002).  There must be "precedent," "controlling

authority," or a "robust consensus of cases of persuasive authority." ***Wesby***, 138 S. Ct. at 589-90 (internal citations and quotations omitted). There may also be the "rare 'obvious case' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." ***Id.*** at 590, *quoting* ***Brosseau v. Haugen***, 543 U.S. 194, 199 (2004) (per curiam).

A.

To prevail on either of their First or Fourth Amendment claims, the reporters must show that Anderson had no probable cause. *See* ***McCabe v. Parker***, 608 F.3d 1068, 1075 (8th Cir. 2010) (lack of probable cause is a necessary element for First and Fourth Amendment claims arising out of an arrest).

To receive qualified immunity, however, Anderson was required to have only "arguable probable cause." *See* ***Peterson v. Kopp***, 754 F.3d 594, 598 (8th Cir. 2014); ***McCabe***, 608 F.3d at 1078. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." ***Peterson***, 754 F.3d at 598. If Anderson had a "mistaken but objectively reasonable belief" that the reporters "had committed a criminal offense," they lose. *See* ***McCabe***, 608 F.3d at 1078. *See also* ***Smithson v. Aldrich***, 235 F.3d 1058, 1062-63 (8th Cir. 2000) (officers entitled to qualified immunity on First and Fourth Amendment because they had arguable probable cause).

Anderson argues he had arguable probable cause to believe the reporters were committing three crimes: refusing to disperse, obstructing officers performing their duties, and interfering with officers in a way that impacted officer safety. *See* **§§ 574.060.1, 574.050.1, 574.040.1, RSMo 2000**; **St. Louis Cnty. Rev. Ordinances tit. VII, § 701.110**. It is disputed whether officers gave directions to disperse *before* Anderson deployed the canister, whether projectiles flew toward him from the area of the lights, and whether the reporters ignored orders to turn off their lights.

The videos confirm the reporters' version of the facts. They do not show dispersal orders or flying projectiles. They do not show orders to turn off the lights before the tear-gas. Rather, they show a peaceful scene interrupted by rubber bullets and tear-gas. Anderson presumes disputed facts in his favor, which this court cannot do because he moved for summary judgment. *See Duncan*, 687 F.3d at 957. Taking the facts most favorably to the reporters, Anderson did not have arguable probable cause to use the tear-gas. *Cf. White v. Jackson*, 865 F.3d 1064, 1076-79 (8th Cir. 2017) (officers had arguable probable cause to arrest protestors who "chose not to disassociate" from unlawful assembly on the street where most of the protests occurred).

Anderson insists at length that the material facts are those he perceived. *See Gladden v. Richbourg*, 759 F.3d 960, 964 (8th Cir. 2014) (stating qualified immunity is evaluated "from the perspective of a reasonable police officer based on facts available to the officer at the time of the alleged constitutional violation"). However, the court is not limited to *only* facts provided by Anderson. *Cf. Church v. Anderson*, 898 F.3d 830, 832 (8th Cir. 2018) (relying on the officer's testimony alone because the plaintiff had no memory of the event).

A court may consider other evidence to determine what a reasonable officer would have perceived. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *White*, 865 F.3d at 1077 (relying on video and audio recording taken by plaintiff to find his story "blatantly contradicted by the record"); *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016) (relying on witness statements to determine probable cause for arrest).

Anderson emphasizes he made a reasonable mistake, like the *Ransom* case, where police fired at an innocent person because they mistook a car backfire for gunshots. *See Ransom v. Grisafe*, 790 F.3d 804, 811 (8th Cir. 2015) (per curiam).

There, it was undisputed the car backfired after police arrived to investigate gunshots. *Id.* This court found their decision to fire their guns reasonable. *Id.* *See also New v. Denver*, 787 F.3d 895, 900-01 (8th Cir. 2015) (finding arguable probable cause even though an officer misidentified two leaves as marijuana because it was a reasonable mistake under the circumstances).

Here, unlike *Ransom*, no undisputed facts show why Anderson deployed the canister. *See Ransom*, 790 F.3d at 811. It is disputed whether the SWAT Team gave dispersal orders, whether there were projectiles, and whether they ordered the reporters to turn off their lights before deploying the tear-gas. Anderson cannot use a mistake-of-fact to claim arguable probable cause.

Anderson is not entitled to qualified immunity even if his sergeant told him to deploy the tear-gas. Anderson cites the *Heartland* case for the proposition that § 1983 "does not sanction tort by association." *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 806 (8th Cir. 2010). True, but nothing in *Heartland* says that a government official is immune if a superior instructs him to engage in unconstitutional conduct. *See id.* Instead, *Heartland* says that defendants must be individually involved in the unconstitutional act to be liable under § 1983. *Id. See also White*, 865 F.3d at 1076 ("[A] plaintiff must be able to prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' "), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, it is undisputed Anderson was involved. He is the one who deployed the tear-gas at the reporters.

B.

Anderson argues that the district court erred in denying summary judgment because he did not commit any First Amendment violation and it was not clearly established that his conduct violated the First Amendment.

-7-

To prevail on a First Amendment retaliation claim, the reporters must show: (1) they engaged in protected activity; (2) Anderson caused an injury to the reporters that would chill a person of ordinary firmness from continuing the activity; (3) and a causal connection between the retaliatory animus and injury. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (per curiam). To establish the causal connection, the reporters must show they were "singled out" because of their exercise of constitutional rights. *See id.*

The district court ruled that factual disputes preclude summary judgment and qualified immunity on the First Amendment claim. On appeal, Anderson focuses on the facts.

He contends first that the reporters did not engage in a protected activity. He says they violated dispersal orders because the protests were declared an unlawful assembly. He also claims projectiles were flying from the reporters' area and they were ignoring requests to turn off their lights.

As discussed, the videos do not show dispersal orders, flying projectiles, or orders to turn off their lights before Anderson deployed the tear-gas. While the reporters agree that the police had asked protestors to stop their activities after dark, this does not mean the reporters could not report from their location. It is undisputed that police had declared some areas as an unlawful assembly, but it is disputed whether the reporters' location was an unlawful assembly. Taking the facts most favorably to the reporters, they were not engaged in unlawful activity when Anderson fired on them.

Anderson asserts a legal argument that the district court applied the wrong test because the reporters did not provide specific proof of his improper motive. To the contrary, the district court applied the right test. It explained that the reporters' First Amendment activity had to motivate Anderson's conduct. *Quraishi*, 2019 WL 2423321, at *6-*8. *See Baribeau*, 596 F.3d at 481; *Hoyland v. McMenomy*, 869 F.3d 644, 657 (8th Cir. 2017). To support its conclusion that the reporters had

-8-

alleged enough about causation to survive summary judgment, the district court noted that the videos show a peaceful scene interrupted by Anderson's tear-gassing of the reporters, but not others. *Quraishi*, 2019 WL 2423321, at *7 ("The raw footage from Al Jazeera, however, showed that numerous people came into the area where the reporters were standing, but only the reporters were shot at and tear gassed."). The reporters were singled out—other people were in their immediate area but only the reporters were tear-gassed at the scene. (Minutes later, men were tear-gassed several feet from the camera.) Anderson's motive is not "so free from doubt as to justify taking it from the jury." *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Anderson objects that the district court considered "allegations of actions by unknown individuals" to show what motivated him. The district court's summary-judgment facts are not based on allegations of actions by unknown individuals. They come from videos showing Anderson deploying the tear-gas. As noted, the district court does not have to rely solely on Anderson's account of events to discern what motivated him. *See Scott*, 550 U.S. at 380; *White*, 865 F.3d at 1077; *Gilmore*, 837 F.3d at 833.

Anderson insists that the law was not clearly established at the time of his alleged misconduct. "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." *Baribeau*, 596 F.3d at 481. *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."). "Official harassment of the press undertaken not for the purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification." *Branzburg v. Hayes*, 408 U.S. 665, 707-08 (1972).

True, the Eighth Circuit has not considered a case "directly on point" with the present facts—where reporters are arrested while peacefully filming a protest. *See*

***Ashcroft v. al-Kidd***, 563 U.S. 731, 741 (2011). An exact match, however, is not required if the constitutional issue is "beyond debate." ***Id.***

Reporting is a First Amendment activity. *See **Branzburg***, 408 U.S. at 681 ("[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated."); ***New York Times Co. v. United States***, 403 U.S. 713, 717 (1971) (Black, J., concurring) ("In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy."). This court has denied qualified immunity to officers who arrested a man after he filmed and verbally challenged their conduct. ***Hoyland***, 869 F.3d at 655-58 (relying on the First Amendment). *See **Chestnut v. Wallace***, 947 F.3d 1085, 1090-91 (8th Cir. 2020) (denying qualified immunity to officer who detained a man observing an arrest), *relying on **Walker v. City of Pine Bluff***, 414 F.3d 989, 992-93 (8th Cir. 2005) (recognizing as clearly established the right to watch police-citizen interactions at a distance and without interfering as of June 1998); ***Thurairajah v. City of Fort Smith***, 925 F.3d 979, 984-85 (8th Cir. 2019) (denying qualified immunity to officer who arrested a man who drove by him during a traffic stop and yelled an expletive), *relying on **Hartman***, 547 U.S. at 256 (recognizing as "settled" that the First Amendment prohibits retaliatory actions against speech as of 1988); ***Peterson***, 754 F.3d at 603 (denying qualified immunity to officer who pepper-sprayed arrestee after he asked for a badge number); ***Small v. McCrystal***, 708 F.3d 997, 1008-09 (8th Cir. 2013) (denying qualified immunity to officers who arrested and prosecuted witnesses who expressed verbal "displeasure" about an arrest); ***Copeland v. Locke***, 613 F.3d 875, 880 (8th Cir. 2010) (denying qualified immunity because "[n]o reasonable police officer could believe that he had arguable probable cause" to arrest an individual for verbally challenging an officer during a traffic stop); ***Gainor v. Rogers***, 973 F.2d 1379, 1388 (8th Cir. 1992) (denying qualified immunity to officers who arrested a man carrying a cross after he argued with them).

Based on this robust consensus of cases of persuasive authority, it is clearly established that using an arrest (that lacks arguable probable cause) to interfere with First Amendment activity is a constitutional violation. *See **Hoyland***, 869 F.3d at

655-58; ***Branzburg***, 408 U.S. at 684-85 (implicitly recognizing where the general public is permitted to roam or stand, the First Amendment requires that news crews also be permitted). A reasonable officer would have understood that deploying a tear-gas canister at law-abiding reporters is impermissible. *See **Anderson***, 483 U.S. at 640.

This court affirms the denial of qualified immunity on the First Amendment claim.

C.

Anderson argues that the tear-gassing was not a seizure under the Fourth Amendment, and he did not violate clearly established law. This court will address the second point. *See **Smith***, 586 F.3d at 580.

To establish a Fourth Amendment violation, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." ***McCoy v. City of Monticello***, 342 F.3d 842, 846 (8th Cir. 2003). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." ***Id.***, *citing **Terry v. Ohio***, 392 U.S. 1, 19 n.16 (1968). A seizure is an "application of physical force to restrain movement, even when it is ultimately unsuccessful." ***California v. Hodari D.***, 499 U.S. 621, 626 (1991). "Only when the officer . . . has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." ***Terry***, 392 U.S. at 19 n.16.

To be seized, "a reasonable person would have believed that he was not free to leave." ***United States v. Mendenhall***, 446 U.S. 544, 554 (1980). But where police attempt a show of force and an individual does not submit, the individual has not been seized. *See, e.g.*, ***Johnson v. City of Ferguson***, 926 F.3d 504, 506 (8th Cir. 2019) (en banc), *quoting **Brendlin v. California***, 551 U.S. 249, 254 (2007).

Neither the district court nor the reporters cite authority that gave "fair warning" to Anderson that deploying one canister of tear-gas was a seizure. *See Sisney*, 674 F.3d at 845.

The district court relied on inapposite law. True, use of pepper spray to arrest an unarmed, compliant suspect can be excessive force. *Peterson*, 754 F.3d at 600-01. *Peterson* is distinguishable, because it focused on the officer's behavior after the individual was already seized. This court did not consider whether the use of chemical agents *alone* is a seizure. *Id.* at 597, 600-01. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) ("The dispositive question is whether the violative nature of the *particular* conduct is clearly established." (internal quotation marks and citation omitted)). Here, the issue is whether deploying tear gas is a seizure.

The reporters cite Supreme Court cases to argue they were restrained because they could not stay in their chosen location. *Brendlin*, 551 U.S. at 257; *Brower v. Cnty. of Inyo*, 489 U.S. 593, 598-99 (1989). But these cases did not give fair warning. *Brendlin* held that, during traffic stops, passengers are seized. *Brendlin*, 551 U.S. at 257. *Brower* held that setting up a roadblock that stops a fleeing suspect is a seizure. *Brower*, 489 U.S. at 598-99. *Brendlin* and *Brower* are inapposite because both involve police action that terminated or restricted freedom of movement. *See Brendlin*, 551 U.S. at 257; *Brower*, 489 U.S. at 598-99. Here, the reporters' freedom to move was not terminated or restricted. *See Johnson*, 926 F.3d at 506 (no seizure where plaintiff was not "ordered to stop and remain in place" and "was able to leave the scene"). They were dispersed.

The reporters cite no "precedent," "controlling authority" or "robust consensus of cases of persuasive authority" to show it was clearly established that tear-gassing was a seizure. *See Wesby*, 138 S. Ct. at 589-90 (internal citations and quotations omitted). *See generally Johnson*, 926 F.3d at 509 (Melloy, J., dissenting) (noting the Sixth Circuit's holding that person is seized when they are not free to stay in place, but also the Second Circuit's holdings that an order to leave can become a seizure depending on whether there was physical contact).

-12-

When Anderson deployed the tear-gas, it was not clearly established that his acts were a seizure. The district court should have granted qualified immunity to Anderson on the Fourth Amendment claim.

IV.

Anderson contends the district court should have granted summary judgment on the state-law battery claim because he did not use unreasonable force, and thus is entitled to official immunity.

"Under Missouri law, a law enforcement officer 'is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment.' " *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 861 (8th Cir. 2015), *quoting Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. App. 1987). Official immunity applies unless Anderson "acted in bad faith or with malice, which ordinarily requires actual intent to cause injury." *See Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017).

"[A] bad-faith allegation survives summary judgment if a plaintiff states 'facts from which it could reasonably be inferred that [defendant] acted in bad faith or from an improper or wrongful motive.' " *Id.*, *quoting State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447-48 (Mo. banc 1986). If a plaintiff presents evidence that an officer engaged in "conscious wrongdoing," a court denies summary judgment to the defendant-officer. *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479-80 (Mo. App. 2005). Conclusory allegations of wrongdoing are not sufficient. *Boude*, 855 F.3d at 935.

Anderson argues that the reporters did not show he acted in bad faith or from an improper or wrongful motive. On the contrary, the reporters presented "specific evidence" inferring "conscious wrongdoing" by Anderson. *See White*, 865 F.3d at 1075; *Blue*, 170 S.W.3d at 479-80. They allege that Anderson tear-gassed them even though they were not doing anything wrong. They claim there were no

dispersal orders by police, no projectiles, and no orders to turn off the lights before the tear-gas. Taking these facts as true, Anderson could have acted with conscious wrongdoing. *See **Blue***, 170 S.W.3d at 479-80.

Anderson again relies on his version of the facts to argue that he did not use unnecessary force. But, viewing the facts most favorably to the reporters: when he deployed the tear-gas, the reporters were not engaged in unlawful activity. *See **Div. of Emp. Sec. v. Bd. of Police Comm'rs***, 864 F.3d 974, 979-80 (8th Cir. 2017) (denying official immunity to officers who punched and shot individual complying with their orders) (applying Missouri law). *Cf. **State ex rel. Ostmann v. Hines***, 128 S.W. 248, 249 (Mo. App. 1910) (no unnecessary force where arrestee was fighting officer).

The district court correctly denied summary judgment on the state-law claim.

\* \* \* \* \* \* \*

The judgment is affirmed in part, reversed in part, and the case remanded for further proceedings consistent with this opinion.

_____