# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1288

_____

Megan Ellyia Green

*Plaintiff - Appellee*

v.

City of St. Louis

*Defendant*

Cliff Sommer, In his individual capacity; Nicholas Manasco, In his individual capacity; Lance Coats, In his individual capacity; Joshua D. Becherer; Off. Matthew A. Tesreau, In his individual capacity; Off. Michael Flatley, In his individual capacity; Joseph Busso, In his individual capacity; Off. Jon B. Long, In his individual capacity; Tim Boyce, In his individual capacity; Bennie Blackmon, In his individual capacity; Off. Daniel Cora, In his individual capacity; Joseph Calabro, In his individual capacity

*Defendants - Appellants*

Director Charlene Deeken, In her individual capacity; Lt. Col. Lawrence O'Toole, In his individual capacity

*Defendants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2022
Filed: November 1, 2022

_____

Before GRUENDER, MELLOY, and ERICKSON, Circuit Judges.
_____

MELLOY, Circuit Judge.

Megan Green attended protests in downtown St. Louis. While she was leaving, an armored St. Louis Metropolitan Police Department ("SLMPD") vehicle fired tear gas in her direction. Green sued the City of St. Louis, 12 police officers who were members of the SWAT team on duty that night, and several SLMPD officials for constitutional and state law violations.

The district court denied a motion to dismiss based on qualified immunity for four defendant officers specifically alleged to have been in the armored vehicle at the time of the incident. As to eight defendant officers not specifically alleged to have been in the vehicle, the district court denied the motion to dismiss on the grounds that additional discovery was needed.

We reverse the denial of qualified immunity as to the eight defendant officers for whom specific allegations were not made. We affirm as to the four defendant officers for whom specific allegations were made. We address other issues as discussed below.

I.

Because this appeal is from the denial of a motion to dismiss based on qualified immunity, our jurisdiction allows us to "accept the district court's factual findings as true and decide whether those facts, as a 'purely legal issue,' involve a clearly established violation of federal law." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation omitted). We do not have jurisdiction to review the sufficiency of the evidence. Welch v. Dempsey, No. 21-3504, 2022 WL 11532068, at *2 (8th Cir. Oct. 20, 2022).

On September 15, 2017, there were protests in St. Louis after the acquittal of Officer Stockley in the death of Anthony Lamar Smith. Green attended these protests. Green was present when SLMPD officers deployed tear gas to break up the protests. After waiting in a synagogue for about an hour for the activity to die down, Green and ten other people left to go home. On the way to her car, Green came across a line of SLMPD police officers. She received permission to cross the line and return to her car but was mocked as she did so. Green then noticed a BEAR (an armored SLMPD truck) driving nearby. She yelled for everyone to take cover. The BEAR passed without incident then made a U-turn and deployed tear gas toward Green.

Green did not hear a warning before the tear gas was deployed. She suffered pain and burning in her eyes and breathing problems that lasted six months. She did not seek medical treatment.

On September 25, 2018, Green filed this action against the City and "John Doe" defendants. Discovery occurred from July 2019 to September 2020. Discovery efforts included: deposing the City's corporate representative who claimed to have spoken with every member of the SWAT team on duty that night, identifying the driver of the BEAR (Officer Bennie Blackmon), and reviewing videos of the protests that the City provided. During discovery, the City admitted that only SWAT team members were on the BEAR that night. The City also identified four SWAT team members as having been on the BEAR during the incident and eight other officers who did not have alibis during the incident. The individual Defendant Officers have neither confirmed nor denied if they were on the BEAR during the incident.

Green asserted to this court that her inability to identify the officers who were in the BEAR during the incident is due to the City's refusal to participate fully in discovery. However, she filed no motions to compel discovery. Further, the court allowed for continuation of discovery seven times, all with the defendants' consent.

On September 30, 2020, Green filed her second amended complaint. Green alleged the City confirmed that four SWAT team members—Cliff Sommer, Joseph Calabro, Daniel Cora, and Bennie Blackmon—were on the BEAR at the time of the incident. She also alleged that neither the City nor defendants could confirm or deny if the other eight SWAT team defendants—Nicholas Manasco, Lance Coats, Joshua Becherer, Matt Tesreau, Michael Flatley, Joseph Busso, Jon Long, and Timothy Boyce—were on the BEAR during the incident. Green asserted that the deployment of tear gas was in retaliation for the First Amendment activity of attending the protests and that officers conspired to deprive her of her First Amendment rights. Finally, she alleged the deployment of tear gas violated several state laws.

Defendant Officers moved to dismiss federal claims based on qualified immunity and state claims based on official immunity. The district court denied the motion.

## II.

In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). On an appeal from a denial of qualified immunity at the motion to dismiss phase, "this court is constrained to the legal question whether the particular facts support the [plaintiff's] claim that [defendants] violated clearly established law." Quraishi v. St. Charles Cnty Mo., 986 F.3d 831, 835 (8th Cir. 2021).

### A. Constitutional Claims Against Specified Defendants

The complaint states Green sheltered in a synagogue for an hour after police broke up the protests and before she left to walk to her car. The complaint also states Green was walking towards her car to go home, not posing a threat, when SLMPD officers deployed tear gas towards her from an armored vehicle. Green has specified

-4-

officers Sommer, Calabro, Cora, and Blackmon were in the BEAR when the tear gas was deployed. Based on these facts, the district court found there was a genuine issue of material fact as to whether the defendant officers tear-gassed Green in retaliation for exercising her First Amendment right.

A First Amendment retaliation claim includes three elements: "(1) [plaintiff] engaged in a protected activity, (2) the government official took adverse action against [plaintiff] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). The district court found a genuine issue of material fact as to whether Green "was engaged in protected activity at the time of the incident, and whether Defendant Officers' motive in spraying Plaintiff was retaliation for said behavior."

Participating in protests to express frustration with a police department is protected First Amendment expression. "[C]riticism of public officials lies at the very core of speech protected by the First Amendment." See Peterson, 754 at 602 (quoting Naucke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002)). The complaint plausibly alleged that Green was participating in protected First Amendment expression while at the protests. The incident occurred later, but the Eighth Circuit has held the adverse action does not have to occur at the time the First Amendment activity is occurring. See e.g., Garcia v. City of Trenton, 348 F.3d 726 (8th Cir. 2003) (finding retaliation when parking tickets were issued after complaining to the mayor).

Deploying tear gas towards individuals is an adverse action. To determine if there was a chilling effect, we ask whether the adverse action would chill the speech of a "person of ordinary firmness." Peterson, 754 F.3d at 602. "The effect on freedom of speech may be small, but since there is no justification for harassing

people for exercising their constitutional rights [the retaliation] need not be great in order to be actionable." Peterson, 754 F.3d at 602 (quoting Garcia, 348 F.3d at 729). This court has gone so far as to conclude that $35 worth of retaliatory parking tickets would chill a person's First Amendment speech. Garcia, 348 F.3d at 729. Pertinent to this case, in 2014, the Eighth Circuit found that "pepper spraying someone in the face 'would chill a person of ordinary firmness.'" Peterson, 754 F.3d at 602 (quoting Revels, 382 F.3d at 876). Given these cases, the intimidating use of the BEAR, and the health impacts of tear gas, it was clearly established that deploying tear gas would chill a person of ordinary firmness.

Regarding the final element, Green plausibly alleged that the tear gas was deployed in retaliation for exercising her First Amendment right at the protests. It was well established in 2017 that using tear gas against individuals not engaging in illegal activity but who had been engaging in First Amendment expression is unconstitutional. For example, in Quraishi, this court affirmed the denial of summary judgment for an officer who deployed tear gas towards law-abiding news reporters who were reporting from the edge of a protest. Quraishi, 986 F.3d at 837–39. See also Welch, 2022 WL 11532068 (affirming denial of qualified immunity for an officer who pepper-sprayed an individual in the face at a protest).

Defendants argue that, even if Green was not engaging in illegal activity when the tear gas was deployed, the action was reasonable because the defendant officers had probable cause to fire the tear gas. As this court found in Welch, having "arguable probable cause" is not a defense against a First Amendment retaliation claim. Welch, 2022 WL 11532068, at *2. We have held that when a defendant deploys tear gas towards law-abiding citizens, the defendant's motive is not "so free from doubt as to justify taking it from the jury." Quraishi, 986 F.3d at 838 (quoting Revels, 382 at 876). As such, Green's allegation, and the district court's finding, that Green was not committing a crime when she was tear-gassed is enough to plausibly allege the tear-gassing was in retaliation for the First Amendment activity.

-6-

## B. Constitutional Claims Against Unconfirmed Defendants

Green has singled out four Defendant Officers as having been confirmed to be on the BEAR at the time of the incident. Green has been unable to confirm or deny where the other eight Defendant Officers were during the incident. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006). Green has taken many steps to confirm who was on the BEAR when the tear gas was deployed and is still unable to name all the officers involved. Despite the frustration expressed by Green, she conducted discovery and filed no motions alleging discovery violations.

The district court held it would "allow Plaintiff to proceed with discovery as to [officers whose location is unspecified], in an effort to establish their liability or lack thereof." The district court indicated these defendants could renew their qualified immunity arguments on summary judgment after more discovery. But qualified immunity shields government officials from suit, not just from liability. Faulk v. City of St. Louis, Missouri, 30 F.4th 739, 744 (8th Cir. 2022) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). A case should be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[.]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

It is true that this court has held "[l]imited discovery is sometimes appropriate 'to resolve the qualified immunity question.'" Soloman v. Petray, 795 F.3d 777, 791 (8th Cir. 2015) (quoting Technical Ordnance, Inc. v. United States, 244 F.3d 641, 647 (8th Cir. 2001)). However, we have also held that if there has been "extensive discovery[,]" and a plaintiff is still only able to allege bare legal conclusions, the case should be dismissed. Faulk, 30 F.4th at 746. Green attempts to distinguish the present case from Faulk by saying that this case alleges all the officers were on the SWAT team, were working that night, and have no established alibi during the

incident. The complaint did not plausibly allege that the eight officers were personally involved in the violation of clearly established constitutional rights. Accordingly, we reverse the district court's denial of Officers Manasco, Coats, Becherer, Tesreau, Flatley, Busso, Long and Boyce's motion to dismiss.

## C. Conspiracy Claim

The complaint also alleged the defendant officers conspired to deprive Green of her federal constitutional rights. Defendant officers moved to dismiss the conspiracy claim based on qualified immunity and the intracorporate conspiracy doctrine, asserting that people within the same organization cannot conspire with one another. The district court rejected these arguments. Our court subsequently addressed the issue of the intracorporate conspiracy doctrine's applicability to § 1983 claims in Faulk. There, we declined to apply the doctrine to all § 1983 claims but held that, at least as of 2017, it was not clearly established that officers within a department could conspire to violate constitutional rights. Faulk, 30 F.4th at 750. The reasoning applied in Faulk applies in this case. It was not clearly established at the time of the incident that officers could conspire with one another to violate a First Amendment right. For this reason, the claim should be dismissed.[1]

## D. Additional Claims Against Remaining Defendants

Green alleged Defendant Officers committed Missouri state law assault, intentional or negligent infliction of emotional distress, and battery. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries

---

[1]Green argues the conspiracy claim is moot as she plans to dismiss the claim herself. However, because it is still possible for this court to grant effective relief by dismissing the conspiracy claim, the issue is not moot. See e.g., Chafin v. Chafin, 568 U.S. 165, 172 (2013).

arising out of their discretionary acts or omissions[.]" Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 585 (8th Cir. 2006). "But official immunity does not apply to discretionary acts done in bad faith or with malice." Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. E.D. 2005) (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986) (en banc). "Bad faith or malice generally requires actual intent to cause injury." Blue 170 S.W. 3d at 479 (citation omitted).

The district court denied official immunity. We have jurisdiction to review the denial of official immunity as it relates to issues of law. Quraishi, 986 F.3d at 835 (citing Thompson v. Dill, 930 F.3d 1008, 1013 (8th Cir. 2019)).

In Quraishi, the Eighth Circuit held that evidence of officers deploying tear gas toward an individual not engaged in illegal activity is "specific evidence" of "conscious wrongdoing." Quraishi, 986 F.3d at 841 (quoting White v. Jackson, 865 F.3d 1064, 1075 (8th Cir. 2017)). In this case, the plaintiff was leaving the protests where there had been a dispersal order. Green alleged that she was not engaging in illegal activity at the time of the incident. For these reasons we affirm the denial of official immunity at this stage.

## III.

We affirm the denial of the motion to dismiss the federal and state claims against the four officers against whom specific allegations have been made. We reverse the denial of the motion to dismiss regarding the eight defendants against whom no specific allegations have been made. We reverse the denial of the motion to dismiss the conspiracy claim against all defendants.

_____