# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 17-3419

———————————————

Eric Roshaun Thurairajah

*Plaintiff - Appellee*

v.

City of Fort Smith, Arkansas; Sebastian County, Arkansas; State of Arkansas; Bill Hollenbeck, individually and in his official capacity as Sheriff for the County of Sebastian

*Defendant*s

Trooper Lagarian Cross, individually and in his Official Capacity as a State Trooper with and for the State of Arkansas, also known as L. Cross

*Defendant - Appellant*

John Does 1-5, individually and in their official capacity in their roles as an employee of the City of Fort Smith, The State of Arkansas, The Arkansas State Police and/or Employee of Sebastian County

*Defendant*

———————

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

———————

Submitted: December 12, 2018
Filed: June 3, 2019

———————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

Arkansas State Trooper Lagarian Cross appeals the district court's[1] denial of qualified immunity on summary judgment against Eric Roshaun Thurairajah's claims of First Amendment retaliation and Fourth Amendment unreasonable seizure. This § 1983 lawsuit suit stems from Trooper Cross's arrest of Thurairajah for disorderly conduct after Thurairajah yelled a two-word expletive at him from a moving vehicle. Trooper Cross believed the shout constituted unreasonable or excessive noise in violation of state law. The district court determined that Trooper Cross's action violated Thurairajah's clearly established constitutional rights. We agree with that analysis and affirm the denial of qualified immunity.

## I. *Background*

In 2015, Trooper Cross was performing a routine traffic stop on a van pulled to the shoulder of a busy five-lane highway in Fort Smith, Arkansas. From 50 feet away, Trooper Cross heard Thurairajah, who was driving by, yell "f**k you!" out of his car window. The van's occupants were a mother and her two young children. Thurairajah was driving at about 35 miles-per-hour on the far lane of the road moving in the opposite direction. Trooper Cross observed the two children in the van react to the yell. Trooper Cross ended the traffic stop of the van and pursued Thurairajah, stopped him, and arrested him, citing Arkansas's disorderly conduct law. Trooper Cross believed the shout constituted "unreasonable or excessive noise" under the law. Ark. Code Ann. § 5-71-207(a)(2).[2]

---

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

[2] Cross argues in his briefing that he believed the disorderly conduct statute could have also been violated on account of the obscene nature of the language. Ark. Code Ann. § 5-71-207(a)(3). At oral argument, however, he waived all reliance on this statutory section.

Thurairajah spent several hours in jail but then was released and all charges against him were dropped. He filed a § 1983 lawsuit against Trooper Cross alleging the trooper violated his First Amendment right to be free from retaliation and his Fourth Amendment right to be free from unreasonable seizure. Trooper Cross moved for summary judgment on the basis of qualified immunity. The district court denied qualified immunity on both claims after concluding Trooper Cross's arrest violated Thurairajah's clearly established constitutional rights.

## II. *Discussion*

On appeal, Trooper Cross asks us to reverse the district court's denial of qualified immunity. Qualified immunity will shield a state actor, like Trooper Cross, from legal liability unless: (1) he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

We review the denial of qualified immunity de novo, viewing the record in the light most favorable to Thurairajah and drawing all inferences in his favor. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017). If we find that either prong is not satisfied—that Thurairajah's constitutional rights were not violated or that any violated right was not so clearly established that Trooper Cross, as a reasonable officer, would have known that his actions were unlawful—then qualified immunity will apply. *See Perry v. Woodruff Cty. Sheriff Dept. by and through Barker*, 858 F.3d 1141, 1144–45 (8th Cir. 2017).

## A. *Fourth Amendment*

Trooper Cross contends that he is entitled to qualified immunity on Thurairajah's Fourth Amendment claim for unreasonable seizure because (1) he had probable cause, or at least arguable probable cause, to arrest Thurairajah for violating Arkansas's disorderly conduct statute, Ark. Code Ann. § 5-71-207(a)(2); or (2) the

relevant law pertaining to the disorderly conduct statute is not sufficiently clear to provide notice that an arrest would violate the Fourth Amendment.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). An officer possesses probable cause to effectuate a warrantless arrest "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart Stores, Inc. et al.*, 619 F.3d 811, 816 (8th Cir. 2010)). Arguable probable cause exists if Thurairajah's arrest "was based on an objectively reasonable—even if mistaken—belief that the arrest was based in *probable cause.*" *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013). Arguable probable cause provides law enforcement officers in a qualified immunity analysis "an even wider berth for mistaken judgments" than the probable cause standard affords a reasonable person. *Id*. Analyzing whether arguable probable cause exists "necessarily includes consideration of probable cause." *Id*. In other words, Trooper Cross is protected by qualified immunity if a reasonable officer in his shoes would have reasonably believed, even if mistaken, based on objective facts, that Thurairajah was violating the disorderly conduct statute's excessive noise prohibition by shouting the two-word insult from a moving vehicle with an unamplified human voice.

The disorderly conduct statute reads: "A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she makes unreasonable or excessive noise." Ark. Code Ann. § 5-71-207(a)(2). Under the statute, the verbal content of Thurairajah's yell is irrelevant. *See id*. The statute does not penalize offensive speech, only unreasonable or excessive noise. *Id*. Arkansas courts have not previously concluded that a two-word yell could violate the disorderly conduct statute's unreasonable or excessive noise provision. To be sure,

shouting can form the basis of disorderly conduct. Those cases where shouting was part of a scenario that resulted in a finding of disorderly conduct, however, involved extended loud shouting and disruptive behavior or amplified sound. As the district court noted, context matters in analyzing the facts. In no case, has a two-word unamplified outburst constituted disorderly conduct.[3]

---

[3] *See Duhe v. City of Little Rock, Arkansas*, No. 4:14-CV-580-KGB, 2017 WL 1536231, at *19–20 (E.D. Ark. Apr. 27, 2017), *aff'd sub nom.* Duhe v. City of Little Rock, 902 F.3d 858 (8th Cir. 2018) (finding at least arguable probable cause existed to make a disorderly conduct arrest when persons were utilizing microphones and amplifiers for an extended time, several people in nearby businesses complained about the disruption of their work, traffic was disrupted, and the noise could be heard from a block away continuously); *Williams v. State*, 887 S.W.2d 312, 314 (Ark. Ct. App. 1994) (affirming the probable cause arrest of a man shouting and cursing at officers as they were arresting juvenile suspects, refusing police commands to back away, shouting and cursing at a store clerk, and pounding on the store window); *Dubois v. State*, No. CACR07-944, 2008 WL 2192096, at *2 (Ark. Ct. App. May 28, 2008) (affirming a finding of disorderly conduct where a man, upon discharge from a medical center, angrily demanded drugs and a ride home, and in the presence of patients and staff "continued 'hollering and yelling' and using profanity for about 15 minutes," then continued to rant and use profanity after police were called); *Pride v. State*, No. CACR 99-272, 1999 WL 826184, at *1–2 (Ark. Ct. App. Oct. 13, 1999) (affirming disorderly cause conviction when law enforcement officer "heard the disturbance as he pulled up" to respond to a nuisance complaint, saw that a crowd had gathered and observed defendant "was yelling, screaming, using profanity, and acting in an irate, hostile, and irrational manner, and continued to do so after being placed in the police car"); *Chambers v. State*, No. CACR94-246, 1995 WL 23389, at *3 (Ark. Ct. App. Jan. 18, 1995) (affirming disorderly conduct conviction of a man who, when asked by law enforcement officers for identification in a grocery store, "was arguing, cursing, and creating a scene in general, and people started to gather around"); *Kelly v. State*, No. CACR 89-340, 1990 WL 128206, at *1 (Ark. Ct. App. Sept. 5, 1990) (affirming disorderly conduct conviction of woman where a police officer responding to a nuisance call observed an upset woman "cursing very loud[ly] and using obscene language" in the presence of a gathering group, and when asked by officers what was wrong again "began cursing, ranting, and raving" so loudly that she had to be placed in closed police car to muffle noise).

Arkansas precedent declining to uphold a disorderly conduct charge is also illustrative. In *M.J. v. State*, the Arkansas Court of Appeals held that 20 seconds of public shouting involving foul language did not establish disorderly conduct. 381 S.W.3d 880, 883–84 (Ark. Ct. App. 2011). Thurairajah's shout was unamplified and fleeting, no crowd gathered because of it, city traffic was not affected, no complaints were lodged by anyone in the community, business was not interrupted, nor were an officer's orders disobeyed. Thurairajah's conduct may have been offensive, but it was not an unreasonable or excessive noise. Trooper Cross lacked even arguable probable cause for an arrest and thus violated Thurairajah's Fourth Amendment right to be free from unreasonable seizure.

Thurairajah's Fourth Amendment right to be free from unreasonable seizure was clearly established at the time of his arrest. *See Pearson*, 555 U.S. at 232. "It was clearly established in 2013 'that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment.'" *Hoyland v. McMenomy*, 869 F.3d 644, 652 (8th Cir. 2017) (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam)). No contrary precedent was issued between 2013 and 2015, when Trooper Cross arrested Thurairajah.

Accordingly, we affirm the denial of qualified immunity for Thurairajah's Fourth Amendment claim.

## B. *First Amendment Claim*

Thurairajah also alleges that his shout was protected First Amendment speech. As protected speech, it should be free from retaliatory government actions.

To prove a constitutional violation, Thurairajah must show that he was arrested in retaliation for a protected speech activity. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). This claim requires a four-part showing that

> (1) [Thurairajah] engaged in a protected activity; (2) [Trooper Cross] took adverse action against him that would chill a person of ordinary

firmness from continuing in the activity; (3) the adverse action was motivated at least in part by [Thurairajah's] exercise of the protected activity; and (4) lack of probable cause or arguable probable cause.

*Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) (cleaned up). All four prongs are satisfied here.

First, Thurairajah's profane shout was protected activity. *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 25 (1971) (holding where defendant walked through courthouse corridor wearing jacket bearing the words "F**k the Draft" in place where women and children were present and no showed no intent to incite disobedience to or disrupt the draft, state lacked power to punish defendant for underlying content of message the inscription conveyed). Second, Trooper Cross's arrest was an action that would chill continued activity by a person of ordinary firmness. As we recognized in *Hoyland*, "there can be little doubt that being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future." 869 F.3d at 657 (internal quotation omitted). And, according to a fair reading of Trooper Cross's affidavit, the arrest was motivated, at least in part, by the content of the shout. Cross Aff. at 1–2, *Thurairajah v. Hollenbeck*, No. 2:16-cv-02123 (W.D. Ark. June 16, 2017), ECF No. 21-4.[4] Finally, as discussed above, Cross had neither probable cause nor arguable probable cause to arrest Thurairajah.[5]

---

[4]The affidavit states that "the young children . . . upon hearing Mr. Thurairajah's yell put their hands over their mouths as if to be alarmed by the statement." Cross Aff. at 1. "[Trooper Cross] observed that they were affected and were alarmed by the statement yelled by Mr. Thurairajah. . . . Thus, [Trooper Cross] immediately decided to leave the traffic stop and initiated a traffic stop of Mr. Thurairajah." *Id.* at 2. It is clear from this reading that Trooper Cross was primarily focused on the content of the *statement*, not the volume or length of the noise.

[5]Because we conclude that "Trooper Cross lacked even arguable probable cause for an arrest and thus violated Thurairajah's Fourth Amendment right to be free from unreasonable seizure," *see supra* Part II.A, the Supreme Court's recent decision holding that a First Amendment retaliatory arrest claim fails as a matter of law when the arrest is based on probable cause is inapposite. *See Nieves v. Bartlett*, No. 17-1174 (U.S. May 8, 2019).

Thurairajah's First Amendment right to be free from retaliation was clearly established at the time of his arrest. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman*, 547 U.S. at 256. With limited exceptions not relevant here, even profanity is protected speech. *See, e.g.*, *Cohen*, 403 U.S. at 25. Criticism of law enforcement officers, even with profanity, is protected speech. *See City of Houston, Texas v. Hill*, 482 U.S. 451, 461 (1987); *Hoyland*, 869 F.3d 644.

Accordingly, we hold that the district court did not err by denying qualified immunity to Trooper Cross for the First Amendment claim.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's order denying qualified immunity.

_____