# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3530

_____

Eric Roshaun Thurairajah

*Plaintiff - Appellant*

v.

City of Fort Smith, Arkansas; Sebastian County, Arkansas; State of Arkansas; Bill Hollenbeck, individually and in his official capacity as Sheriff for the County of Sebastian

*Defendants*

Trooper Lagarian Cross, individually and in his Official Capacity as a State Trooper with and for the State of Arkansas, also known as L. Cross

*Defendant - Appellee*

John Does 1-5, individually and in their official capacity in their roles as an employee of the City of Fort Smith, The State of Arkansas, The Arkansas State Police and/or Employee of Sebastian County

*Defendant*

_____

No. 19-3603

_____

Eric Roshaun Thurairajah

*Plaintiff - Appellee*

v.

City of Fort Smith, Arkansas; Sebastian County, Arkansas; State of Arkansas; Bill Hollenbeck, individually and in his official capacity as Sheriff for the County of Sebastian

*Defendant*s

Trooper Lagarian Cross, individually and in his Official Capacity as a State Trooper with and for the State of Arkansas, also known as L. Cross

*Defendant - Appellant*

John Does 1-5, individually and in their official capacity in their roles as an employee of the City of Fort Smith, The State of Arkansas, The Arkansas State Police and/or Employee of Sebastian County

*Defendant*
_____

Appeals from United States District Court
for the Western District of Arkansas - Ft. Smith
_____

Submitted: January 13, 2021
Filed: July 2, 2021
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

The present case stems from Arkansas State Trooper Lagarian Cross's arrest of Eric Roshaun Thurairajah for disorderly conduct after Thurairajah yelled an expletive at him from a moving vehicle. Thurairajah filed suit against Trooper Cross, asserting, among other things, First Amendment retaliation and Fourth Amendment unreasonable seizure under 42 U.S.C. § 1983 and claims under the Arkansas Civil

Rights Act (ACRA), Ark. Code Ann. §§ 16-123-101 to -108, for violating rights secured by Article II, §§ 6, 8, 9, and 15 of the Arkansas Constitution. Thurairajah appeals the district court's[1] order granting summary judgment on his ACRA claims and punitive-damages claims, order in limine precluding Thurairajah from presenting a punitive-damages argument to the jury, and order denying a new trial for damages on his § 1983 claims of First Amendment retaliation and Fourth Amendment unreasonable seizure. Trooper Cross appeals the district court's order awarding attorney's fees to Thurairajah. We affirm.

I. *Background*

Trooper Cross arrested Thurairajah for disorderly conduct after Thurairajah yelled "f\*\*k you" at him from a moving vehicle. Trooper Cross believed the shout constituted unreasonable or excessive noise in violation of Arkansas law.[2] Thurairajah sued Trooper Cross, asserting, among other things, First Amendment retaliation and Fourth Amendment unreasonable seizure under 42 U.S.C. § 1983 and claims under the ACRA for violating rights secured by Article II, §§ 6, 8, 9, and 15 of the Arkansas Constitution. Trooper Cross moved for summary judgment based on qualified immunity. The district court granted Trooper Cross's motion on all ACRA claims and Thurairajah's claims for punitive damages. The district court held that Thurairajah failed to present evidence that Cross's conduct was "malicious" to support his ACRA claims, as required by Arkansas law. Likewise, the district court held that Thurairajah did not present evidence demonstrating that Trooper Cross's actions were motivated by an evil motive or intent or involved reckless or callous indifference to Thurairajah to support his punitive-damages claims. The district court denied the motion with respect to the individual capacity § 1983 claims asserting First

[1]The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

[2]See our prior opinion, *Thurairajah v. City of Fort Smith*, 925 F.3d 979 (8th Cir. 2019), for a full recitation of the facts.

and Fourth Amendment violations. We affirmed the district court's denial of qualified immunity on these claims. *See Thurairajah*, 925 F.3d at 982. The district court granted Thurairajah's cross-motion for partial summary judgment with respect to the issue of Trooper Cross's liability to Thurairajah under § 1983 for violations of his First and Fourth Amendment rights.

The district court submitted the issue of damages to a jury following trial. Prior to trial, Thurairajah's pretrial disclosure sheet indicated his intent to argue that his ACRA claims should remain pending and that he was entitled to punitive damages on the claims. The court sua sponte entered an order in limine precluding Thurairajah from presenting a punitive-damages argument to the jury. At trial, the jury returned a verdict finding that Trooper Cross's actions were not the proximate cause of Thurairajah's damages and awarded him nothing. The district court subsequently awarded nominal damages of $1.00 to Thurairajah. Thurairajah moved for a new trial, alleging that defense counsel acted inappropriately and that the district court should not have admitted evidence of a collateral source at trial. The district court denied the motion. Thurairajah moved for attorney's fees, and the district court awarded attorney's fees of $15,100.00.

## II. *Discussion*

Thurairajah appeals the district court's order granting summary judgment on his ACRA claims and punitive-damages claims, order in limine precluding Thurairajah from presenting a punitive-damages argument to the jury, and order denying a new trial for damages on his § 1983 claims of First Amendment retaliation and Fourth Amendment unreasonable seizure. Trooper Cross appeals the district court's order awarding attorney's fees to Thurairajah.

### A. *ACRA*

Thurairajah first challenges the district court's dismissal of his ACRA claims. He asserts that the district court misapplied Arkansas statutory immunity.

Specifically, he asserts that, under Arkansas law, "malice" is equated with the "clearly established" prong of federal qualified immunity and that no analysis of Trooper Cross's subjective intent is necessary. According to Thurairajah, had the district court not dismissed his ACRA claims, he would have been permitted a punitive-damages instruction as a matter of law.

"We review de novo a district court's grant of summary judgment." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020).

"Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance,[3] for damages for acts or omissions, *other than malicious acts or omissions*, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a) (emphasis added). The Arkansas Supreme Court "has recognized that the immunity provided by Ark. Code Ann. § 19-10-305 . . . is similar to that provided by the Supreme Court for federal civil-rights claims." *Fegans v. Norris*, 89 S.W.3d 919, 924 (Ark. 2002). "In interpreting § 19-10-305, [the Arkansas Supreme Court] ha[s] traditionally been guided by the analysis adopted by the United States Supreme Court for qualified-immunity claims in federal civil-rights actions." *City of Fayetteville v. Romine*, 284 S.W.3d 10, 13 (Ark. 2008) (citing *Fegans*, 89 S.W.2d at 919).

> Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established, and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would

---

[3]Neither party has produced evidence that Trooper Cross is "covered by liability insurance." *Id.*

have knowledge. The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry.

*Id.* at 13–14 (cleaned up).

"*Further*, employees and officers of the State [of Arkansas] are afforded statutory immunity from civil liability and from suit for *nonmalicious acts* occurring within the course of their employment." *Ark. State Med. Bd. v. Byers*, 521 S.W.3d 459, 463 (Ark. 2017) (emphases added). "Thus, for a plaintiff to counter an assertion of [statutory] immunity, he or she must allege sufficient facts in his or her complaint to support the claim of *malicious conduct* by the defendant." *Fuqua v. Flowers*, 20 S.W.3d 388, 391 (Ark. 2000) (emphasis added). The Arkansas Supreme Court has defined *malice* as follows:

> "It is true that in law malice is not necessarily personal hate. It is rather an *intent and disposition to do a wrongful act greatly injurious to another.*" *Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 185, 485 S.W.2d 192, 195 (1972); *see also Stine v. Sanders*, 66 Ark. App. 49, 987 S.W.2d 289 (1999). Malice is also defined as "the *intentional doing of a wrongful act* without just cause or excuse, with an *intent to inflict an injury* or under circumstances that the law will imply an *evil intent.* . . . A *conscious violation* of the law . . . which operates to the prejudice of another person. A *condition of the mind* showing a heart . . . fatally bent on mischief." Black's Law Dictionary, 956–57 (6th ed.1990).

*Id.* (emphases added) (alterations in original).

In summary, the "immunity [provided under § 19-10-305] is similar to that provided for federal civil-rights claims *except for the non-malicious requirement.*" *Smith v. Norris*, No. 4:12-cv-00277-BSM, 2013 WL 12109475, at *2 (E.D. Ark. Nov. 26, 2013) (emphasis added) (granting summary judgment on the ACRA claim

because the plaintiff produced "no evidence that defendants' actions were malicious"), *aff'd*, 583 F. App'x 563 (8th Cir. 2014) (per curiam). "[T]he immunity provided by § 19-10-305" is "[m]ore rigorous[]" than federal qualified immunity because it "only provides state employees with statutory immunity for non-malicious acts." *Stoner v. Ark. Dep't of Corr.*, 983 F. Supp. 2d 1074, 1103 (E.D. Ark. 2013). By contrast, "a defense of qualified immunity [under federal law] may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

The Arkansas Supreme Court's decision in *Byers* demonstrates that § 19-10-305's "malicious acts or omissions" inquiry is a separate inquiry from traditional federal qualified immunity analysis. In *Byers*, the court concluded that the defendant was "entitled to statutory immunity because [the plaintiff] . . . failed to demonstrate malice"; therefore, "statutory immunity bar[red] [the plaintiff's] ACRA claims against [the defendant] in her individual capacity." 521 S.W.3d at 464. While the plaintiff asserted "that statutory immunity did not bar the claims because [the defendant] acknowledged that she 'knew the law' and 'knew she could not retaliate,'" *id.*, the plaintiff never produced evidence of "malice." *Id.* at 465. According to the court, "a bare allegation of willful and wanton conduct is not enough to demonstrate malice." *Id.* at 464.

This court has also recognized the necessity of a plaintiff producing evidence of malice under § 19-10-305. *See, e.g.*, *Boudoin v. Harsson*, 962 F.3d 1034, 1044 (8th Cir. 2020) (holding plaintiff failed to show malice for purposes of Arkansas statutory immunity because he "ha[d] not shown a conscious violation of the law"); *Langford v. Norris*, 614 F.3d 445, 465 (8th Cir. 2010) (granting statutory immunity on plaintiff's state-law claims because the complaint did not "allege that [the state officials] 'acted with malice or beyond the scope of [their] employment'").

Whether a defendant is entitled to qualified immunity under federal law "is not dispositive" of whether a defendant is entitled to statutory immunity under Arkansas law. *See Byers*, 521 S.W.3d at 465. Our prior decision denying Thurairajah qualified immunity addressed only the objective reasonableness of Trooper Cross's arrest of Thurairajah; it did not consider Trooper Cross's subjective intent. *See Thurairajah*, 925 F.3d at 983–85. Applying *Byers*, Thurairajah was required to satisfy traditional qualified immunity analysis *and* also show that Trooper Cross had a malicious intent to defeat Trooper Cross's defense of statutory immunity. Thurairajah alleged in his complaint that Trooper Cross's "actions were malicious, willful, and wanton deprivations of Plaintiff['s] rights, shocking to the conscience of ordinary citizens, and are sufficient to justify an award of punitive damages." Am. Compl. at 12, ¶ 34, *Thurairajah v. Hollenbeck*, No. 2:16-cv-02123-PKH (W.D. Ark. 2016), ECF No. 4. However, as the district court concluded, Thurairajah presented no evidence on summary judgment that Trooper Cross acted maliciously, i.e, that he acted with the "intent and disposition to do a wrongful act greatly injurious to another," intentionally did the "wrongful act without just cause or excuse, with an intent to inflict an injury," or consciously violated the law. *See Fuqua*, 20 S.W.3d at 391 (quotations omitted). Indeed, Thurairajah offered no evidence challenging Trooper Cross's *subjective* belief that Thurairajah's "shout constituted 'unreasonable or excessive noise' under the law." *Thurairajah*, 925 F.3d at 982 (quoting Ark. Code Ann. § 5-71-207(a)(2)). As a result, we affirm the district court's dismissal of Thurairajah's ACRA claims.[4]

---

[4]Because the district court did not err in dismissing the ACRA claims against Trooper Cross based on statutory immunity, Thurairajah's argument that he was entitled to a punitive-damages instruction based on the ACRA claims necessarily fails. *See* Appellant's Br. at 16 ("Had the lower court not dismissed Thurairajah's [ACRA] claims, Thurairajah would have been allowed a punitive[-]damages instruction as a matter of law."); Appellant's Reply Br. at 9 ("Thurairajah only raises the Court's awareness of the punitive[-]damages provision of the Arkansas statute to point out that dismissal of [the ACRA claims] is not harmless error . . . .").

B. *Punitive Damages*

Thurairajah next challenges the district court's rulings concerning punitive damages on his federal claims. The district court granted summary judgment to Trooper Cross on those claims because it determined that "Thurairajah fail[ed] to present any evidence demonstrating a genuine dispute over Cross's statement of subjective good faith." *Thurairajah v. Hollenbeck*, No. 2:16-cv-02123-PKH, 2017 WL 6813782, at *3 (W.D. Ark. Oct. 6, 2017). Then, after the court learned of Thurairajah's intention to argue that the ACRA claims "should remain pending, and that [Thurairajah] is therefore entitled to 'guaranteed punitive damages,'" the court sua sponte entered an order in limine to preclude such argument. Order in Lim. at 1, *Thurairajah v. Hollenbeck*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 64. The court held that "[t]he law does not entitle [Thurairajah] to punitive damages, guaranteed or otherwise, and he may not present a punitive-damages argument to the jury." *Id.* The court noted that "[t]o the extent [Thurairajah] believes the Court has ruled in error, *and his ACRA claims against [Trooper Cross] are improperly dismissed*, he may consider the matter preserved for appeal." *Id.* (emphasis added). During the jury-instruction conference, Thurairajah's attorney failed to object to the court's decision not to give a jury instruction on punitive damages for the § 1983 claims.

In Thurairajah's opening brief, he asserts that the district court "[i]mproperly [d]ismissed [his] claims for [p]unitive [d]amages." Appellant's Br. at 17 (emphasis omitted). In his reply brief, he modifies his argument, asserting that he "was [e]ntitled to a [p]unitive [d]amages [i]nstruction" "for his federal claims." Appellant's Reply Br. at 8. We review de novo the district court's dismissal of the punitive-damages claims. *See Smith*, 954 F.3d at 1079. "We review for abuse of discretion the District Court's decision to refuse [an] instruction." *Torbit v. Rider Sys., Inc.*, 416 F.3d 898, 903–04 (8th Cir. 2005).

Under any standard of review—de novo, abuse of discretion, or plain error[5]—Thurairajah's challenges to the district court's punitive-damages rulings fail. "In a § 1983 case, both compensatory and punitive damages are available upon proper proof." *Coleman v. Rahija*, 114 F.3d 778, 787 (8th Cir. 1997). "Compensatory damages . . . are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Smith v. Wade*, 461 U.S. 30, 52 (1983). Here, the jury answered "[n]o" to the question of whether "Trooper Cross'[s] constitutional violations were the proximate cause of any damages resulting from the occurrence." Jury Verdict at 1, *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 66. "Because the jury unambiguously found that [Trooper Cross's conduct] caused no direct injury to [Thurairajah], . . . . nominal damages [were] the appropriate means 'to vindicate constitutional rights whose deprivation has not caused an actual, provable injury.'" *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005) (quoting *Wescott v. Crinklaw*, 133 F.3d 658, 662 (8th Cir. 1998)). The district court, therefore, properly awarded compensatory damages in the amount of one dollar. *See id.*

By contrast, "punitive damages . . . are never awarded as of right, no matter how egregious the defendant's conduct." *Smith*, 461 U.S. at 52. Instead, "punitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown." *Coleman*, 114 F.3d at 787 (citing *Smith*, 461 U.S. at 52). The purpose of awarding punitive damages to a plaintiff is "to punish the defendant for his or her willful or malicious conduct and to deter others from similar behavior." *Id.* (cleaned up). "The focus, in determining the propriety of punitive damages, is on the intent of the defendant, and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Id.* (citations omitted). "[A] jury may

---

[5]Trooper Cross argues that because Thurairajah failed to object to the lack of a punitive-damages instruction, our review is for plain error.

be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56.

A finding that an official violated a plaintiff's constitutional rights, "while establishing liability under § 1983, does not necessitate a finding of callous indifference warranting punitive damages." *Coleman*, 114 F.3d at 787. The plaintiff must produce evidence that the defendant's conduct was "sufficiently egregious to justify the imposition of punitive damages." *Id.* at 788.

Neither at summary judgment nor at trial did Thurairajah produce sufficient evidence that Trooper Cross's conduct warranted the imposition of punitive damages. At summary judgment, Trooper Cross averred that he "believed that Mr. Thurairajah had committed the crime of disorderly conduct." Ex. D, Aff. of Trooper Cross at 2, ¶ 6, *Thurairajah v. Hollenbeck*, No. 2:16-cv-02123-PKH (W.D. Ark. 2017), ECF No. 21-4. As the district court held, "Thurairajah fail[ed] to present any evidence demonstrating a genuine dispute over Cross's statement of subjective good faith, and nothing . . . in the record, including in Thurairajah's deposition testimony, would support a reasonable inference that Cross was acting out of malice or callous disregard." *Thurairajah*, 2017 WL 6813782, at *3 (footnote omitted) (citation omitted).

Additionally, Thurairajah's trial testimony failed to establish facts meeting the punitive-damages standard. Indeed, some of Thurairajah's testimony confirms that Trooper Cross acted not with an "evil motive or intent, or . . . reckless or callous indifference to [Thurairajah's] federally protected rights," *Smith*, 461 U.S. at 56, but instead to prevent children from hearing expletives. Thurairajah testified that Trooper Cross said, "You can't talk to cops like that; you can't yell F-you to a cop. *Could be kids out. There could be kids out*." Trial Tr. at 67, *Thurairajah v. Cross*, No.

2:16-cv-02123-PKH (W.D. Ark. 2020), ECF No. 90 (emphases added). At the time Thurairajah yelled the expletive, Trooper Cross was performing a routine traffic stop on a van containing "a mother and her two young children. . . . Trooper Cross observed the two children in the van react to the yell." *Thurairajah*, 925 F.3d at 982; *see also* Trial Tr. at 118 (confirming that Trooper Cross "personally observe[d] the reaction of the children in the car" and saw "them putting their hands over their mouth" when they heard Thurairajah yell the expletive). Furthermore, Thurairajah's additional testimony that Trooper Cross was "angry," "yelled . . . very loudly," "threw [Thurairajah] in the back of the [police] car," drove "15 miles per hour over the speed limit" while taking Thurairajah to jail, and told the jailers that Thurairajah was under arrest for saying "'[f]**k you' to a cop," Trial Tr. at 67, 70, 71, is insufficient to prove that Trooper Cross's conduct was "sufficiently egregious to justify the imposition of punitive damages." *Coleman*, 114 F.3d at 788.

Accordingly, we hold that the district court did not err in dismissing Thurairajah's federal punitive-damages claims or in not instructing the jury on punitive damages.

## C. *New Trial*

Thurairajah also argues that the district court abused its discretion in denying his motion for a new trial due to attorney misconduct by defense counsel. We review for an abuse of discretion a district court's denial of a motion for a new trial; in doing so, the "key issue [is] whether a new trial is necessary to prevent a miscarriage of justice." *Hoffmeyer v. Porter*, 758 F.3d 1065, 1068 (8th Cir. 2014) (quotation omitted). "Absent error affecting the substantial rights of the parties, neither reversal nor a new trial is required." *Id.* (quotation omitted).

The factual basis for Thurairajah's motion occurred during defense counsel's cross-examination of Thurairajah. The interchange between Thurairajah and counsel focused on a prior statement of Thurairajah during a deposition. The statement

concerned Thurairajah's views about the prosecutor's decision to bring charges against him. Thurairajah's counsel and the prosecutor had apparently agreed prior to trial that the prosecutor would not be called to testify by Thurairajah if the defense would not ascribe responsibility to the prosecutor for bringing the disorderly conduct charges.

In his motion for a new trial, Thurairajah argued that his counsel and defense counsel agreed in writing that Thurairajah's counsel would not call the prosecutor "as a witness on the condition [defense counsel] would not assert at trial that [the prosecutor] . . . was responsible for criminal defense fees that [Thurairajah] was claiming as damages." Mot. for New Trial at 2–3, *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 70. Thurairajah then requested a prosecutorial-immunity instruction "to rectify" defense counsel's breach of the agreement. *Id.* at 3. According to Thurairajah, he was prejudiced by defense counsel's breach of the agreement because the prosecutor's "testimony would likely have made a difference in the jury's" decision of whether to award compensatory damages to Thurairajah. *Id.*

The district court denied Thurairajah's motion for a new trial. According to the court, "Questions in passing about whether Defendant could be responsible for court costs and attorney's fees, improper or not, likely had little effect on Plaintiff's inability to convince the jury that he had been harmed by Defendant." Op. & Order at 4, *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 79. The district court observed that Thurairajah "simply was not credible" regarding "his claimed harm and claimed damages." *Id.* Thurairajah, the court explained, gave "unconvincing testimony" on the primary damages claimed in his case; therefore, the court understood "why the jury might find what would independently be the most provable of Plaintiff's alleged damages—the towing and taxi costs—were neither as substantial as Plaintiff alleged nor proximately caused by Defendant's unconstitutional acts." *Id.* Although the court noted it "likely would have awarded the

towing and taxi costs" Thurairajah incurred after his arrest, it concluded that "the jury's decision not to do so in light of the rest of the testimony does not result in a verdict against the great weight of the evidence."*Id.*

"A new trial is required only when necessary to avoid a miscarriage of justice. The district court is in the best position to evaluate how severely an attorney's misconduct prejudices the opposing party during a trial." *Gearin v. Wal-Mart Stores, Inc.*, 53 F.3d 216, 219 (8th Cir. 1995) (citations omitted).

Here, we hold the district court did not abuse its discretion in denying Thurairajah's motion for a new trial. The district court was "in a far better position than we to appraise the effect of [any] improper conduct by counsel." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (quotation omitted). It determined that it was Thurairajah's lack of credibility—not defense counsel's questions about who Thurairajah blamed for his arrest and prosecution—that influenced the jury's decision to not award compensatory damages. Moreover, the district court found it "not implausible" that a misunderstanding actually occurred between counsel concerning Thurairajah calling the prosecutor as a witness based on its review of the phone call between Thurairajah's counsel and defense counsel. Order Den. Mot. for Sanctions at 2 n.1, *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 83.[6]

## D. *Attorney's Fees*

After trial, Thurairajah moved for an award of attorney's fees and costs. Thurairajah requested attorney's fees in the amount of $22,760 for both of his attorneys and costs in the amount of $631.47. Trooper Cross opposed the motion. The

---

[6]After the district court denied Thurairajah's motion for new trial, Thurairajah moved for sanctions against defense counsel based on defense counsel's alleged misconduct. The district court denied the sanctions motion after listening to the recorded phone call and reviewing the transcript of the call.

court granted the motion in part, awarding $15,100 in attorney's fees against Trooper Cross. It taxed costs against Trooper Cross in the amount of $509.05.

On cross-appeal, Trooper Cross argues that the district court erroneously awarded attorney's fees to Thurairajah for two reasons: (1) the district court failed to use the correct legal standard set forth by the Supreme Court in *Farrar v. Hobby*, 506 U.S. 103 (1992); and (2) the factors for determining if a plaintiff, who was awarded only nominal damages, should be awarded attorney's fees significantly weigh against awarding attorney's fees to Thurairajah.

"We review the district court's award of attorney's fees for abuse of discretion." *Piper v. Oliver*, 69 F.3d 875, 876 (8th Cir. 1995). "The deferential abuse of discretion standard has been and remains paramount to our review of a district court's decision to grant or deny attorney's fees in a nominal damages case." *Id.* at 877.

Section 1988 of 42 U.S.C. governs attorney's fees in § 1983 cases. *Id.* at 876. It "permits a court, in its discretion, to 'allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Id.* (quoting 42 U.S.C. § 1988). Under § 1988, "[a] party who recovers even nominal damages is a prevailing party." *Id.* (citing *Farrar*, 506 U.S. at 112).

> In *Farrar*, the United States Supreme Court held that although the nominal nature of an award does not affect the prevailing party inquiry, the degree of the plaintiff's overall success does bear on the reasonableness of a fee award. 506 U.S. at [114], 113 S. Ct. at 574. Indeed, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief the only reasonable fee is usually no fee at all." *Id.* at [115], 113 S. Ct. at 575 (citation omitted). In her concurrence, Justice O'Connor pointed out that the Court was not foreclosing recovery of attorney's fees in nominal damages cases. Justice O'Connor acknowledged that although

-15-

nominal awards often represent technical or pyrrhic victories that merit no award of attorney's fees, "that is not to say that all nominal damages awards are *de minimis*." *Id.* at [121], 113 S. Ct. at 578 (O'Connor, J., concurring). The court must evaluate each nominal damages case individually to determine if the plaintiff's victory is merely "technical" or "pyrrhic." After making such a finding, the court is excused from engaging in the typically complex process of attorney's fee calculations. Instead, "it is enough for a court to explain why the victory is *de minimis* and announce a sensible decision to 'award low fees or no fees at all.'" *Id.* at [118], 113 S. Ct. at 576 (quoting *Farrar* majority opinion).

*Id.* at 876–77 (second alteration in original).

We have previously noted our past reliance on Justice O'Connor's concurrence "in granting district courts discretion to evaluate each nominal damages case individually." *Id.* at 877 (citing *Milton v. Des Moines*, 47 F.3d 944, 946 (8th Cir. 1995); *Jones v. Lockhart*, 29 F.3d 422, 423 (8th Cir. 1994)). The task of the district court "is to use the factors set out by Justice O'Connor and adopted by this circuit . . . , to determine whether a civil rights plaintiff's victory was merely a technical or pyrrhic one that merits no award of attorney's fees." *Id.* (citing *Jones*, 29 F.3d at 423–24). "The three factors used to determine the nature of the plaintiff's victory are: 1) the difference between the amount of damages recovered and the amount sought; 2) the significance of the legal issue; and 3) the public goal or purpose that the litigation served." *Id.* (citing *Jones*, 29 F.3d at 424).

In *Piper*, the plaintiff filed suit against police officers for violation of his Fourth Amendment rights for illegally detaining him at the jail for three hours. *Id.* at 876. The district court determined that the officers did violate the plaintiff's Fourth Amendment rights; however, the court awarded the plaintiff only one dollar in nominal damages and no compensatory or punitive damages. *Id.* Thereafter, the plaintiff moved for attorney's fees and costs under § 1988. *Id.* After determining that the plaintiff was entitled to an attorney's fee award, the district court "then evaluated

-16-

[the plaintiff's] requested fees in light of the nominal damages award and reduced the fees by almost two-thirds." *Id.* at 877. On appeal, the defendants "contest[ed] the appropriateness of these awards in light of the nominal damages award." *Id.* at 876.

We held that the district court did not abuse its discretion in awarding attorney's fees and costs despite the plaintiff only receiving nominal damages of one dollar. The district court had "engaged in a careful *Jones* analysis and determined that [the plaintiff] won more than a technical victory." *Id.* at 877. First, "the court noted that the discrepancy between the amount sought and the amount received by [the plaintiff] was in no way comparable to that in *Farrar*." *Id.* at 877. In *Farrar*, the plaintiffs sought $17 million in compensatory damages, but the district court awarded the plaintiffs only nominal damages of one dollar. 506 U.S. at 107. Second, the district court concluded that the plaintiff's "right to be free from illegal detention was a significant one." *Piper*, 69 F.3d at 877. And third, the district court determined that "a public goal had been served by [the plaintiff's] victory in encouraging [the defendants] to refashion their . . . procedures to avoid future illegality." *Id.*; *see also Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 576 (8th Cir. 2007) (holding that the district court did not abuse its discretion in awarding attorney's fees to an employee in his religious discrimination and retaliation action in which "the jury awarded him nominal damages of $1.00").

Applying *Piper*,[7] we hold that the district court did not abuse its discretion in awarding attorney's fees in this nominal damages case. *See Piper*, 69 F.3d at 877. First, "the discrepancy between the amount sought and the amount received by [Thurairajah] was in no way comparable to *Farrar*." *Id.* The discrepancy between the

_____

[7]While Trooper Cross urges us not to follow *Piper* because it was "wrongly decided and not consistent with *Farrar*," Cross-Appellant's Reply Br. at 9, "[w]e are bound to follow the decision of another panel, which becomes the law of the circuit. Only the court en banc may overrule an earlier decision and adopt a differing rule of law." *United States v. Olness*, 9 F.3d 716, 717 (8th Cir. 1993).

amount Thurairajah sought (initially, $25,000 and then $5,000)[8] and the amount received (one dollar in nominal damages) is substantially less than the discrepancy in *Farrar* ($17 million sought and one dollar in nominal damages received). Second, the district court recognized the significance of the legal issue; Trooper Cross "violated [Thurairajah's] [F]irst and [F]ourth [A]mendment rights in a very specific way—by arresting [him] for exercising his right to free speech despite clearly established law prohibiting that arrest." *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH, 2019 WL 5566531, at *1 (W.D. Ark. Oct. 28, 2019). Third, a public goal has been served by Thurairajah's victory because "[t]he Missouri Sheriff's Association integrated Thurairajah's case in their legal training update." Pl.'s Br. in Support of Mot. for Att'y's Fees at 9, *Thurairajah v. Cross*, No. 2:16-cv-02123-PKH (W.D. Ark. 2019), ECF No. 73. Lastly, as in *Piper*, after determining that Thurairajah was entitled to an attorney's fee award, the district court "then evaluated [Thurairajah's] requested fees in light of the nominal damages award and reduced the fees" by almost $8,000 in attorney's fees and $122.42 in costs. *See Piper*, 69 F.3d at 877.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I agree with the court's decision to affirm the denial of Thurairajah's motion for a new trial and to uphold the award of attorney's fees to Thurairajah. However, I disagree that Trooper Cross is entitled to summary judgment on Thurairajah's Arkansas Civil Rights Act (ACRA) claims and would remand to the district court on that basis with instructions to also reconsider its punitive damages rulings.

---

[8]Thurairajah initially offered to the settle the case for $25,000, but following our remand, offered to settle the case for $5,000, including attorney's fees.

Arkansas employees and officers are statutorily immune from civil liability, including for claims brought under the ACRA, for "nonmalicious acts occurring within the course of their employment." Ark. State Med. Bd. v. Byers, 521 S.W.3d 459, 463 (Ark. 2017). As the court acknowledges, a plaintiff can prove malice under Arkansas law by showing that the defendant committed a "conscious violation of the law," Boudoin v. Harsson, 962 F.3d 1034, 1044 (8th Cir. 2020) (quoting Fegans v. Norris, 89 S.W.3d 919, 924-25 (Ark. 2002) (per curiam)), or intentionally committed "a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent," Fuqua v. Flowers, 20 S.W.3d 388, 391 (Ark. 2000) (quoting Malice, Black's Law Dictionary (6th ed. 1990)). When considering this issue at summary judgment, we must view the record in the light most favorable to the nonmovant—here, Thurairajah. See Ziesmer v. Hagen, 785 F.3d 1233, 1237 (8th Cir. 2015).

Thurairajah described the arrest as "hostile," "violent," and "personal." He testified that Trooper Cross yelled at him to get out of the car, walked towards him "fast," and asked him if he "thought that s**t was cute." Thurairajah also testified that Trooper Cross was "aggressively moving [him] around" during the arrest, was "very aggressive through all the searches [of him]," and "was obviously very angry." At one point, Trooper Cross told Thurairajah, "You can't talk to cops like that; you can't yell F-you to a cop." And at the jail later, Thurairajah heard Trooper Cross tell someone, "This kid said 'F**k you' to a cop; so I thought I would bring him in." Viewing these facts in Thurairajah's favor, a jury could reasonably conclude that Trooper Cross arrested Thurairajah not because he believed Thurairajah engaged in disorderly conduct, but because he was angered by the profanity Thurairajah directed at him. And given that it was clearly established at the time that "[c]riticism of law enforcement officers, even with profanity, is protected speech," Thurairajah v. City of Fort Smith, 925 F.3d 979, 985 (8th Cir. 2019) (first citing City of Houston v. Hill, 482 U.S. 451, 461 (1987); and then citing Hoyland v. McMenomy, 869 F.3d 644 (8th Cir. 2017)), a jury could conclude that Trooper Cross consciously violated the law or

arrested Thurairajah "without just cause or excuse, [and] with an intent to inflict injury," <u>Fuqua</u>, 20 S.W.3d at 391 (quoting <u>Malice</u>, <u>Black's Law Dictionary</u> (6th ed. 1990)).

Because I do not believe that Trooper Cross is entitled to statutory immunity on Thurairajah's ACRA claims, I would reverse the grant of summary judgment on those claims. This, in turn, would resurrect Thurairajah's claims for punitive damages under Arkansas law. <u>See</u> Ark. Code Ann. §§ 16-123-108(c)(1), -107(b). And because it is a closely related issue,[9] I would also instruct the district court to revisit Thurairajah's request for punitive damages on his federal claims.

———————————————————

[9]The district court dismissed Thurairajah's federal-law claims for punitive damages on the basis of his perceived failure to dispute Trooper Cross's "subjective good faith," a factual question closely related to that of "malice" under Arkansas law.