# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1049

———————————————

Jeffery Just

*Plaintiff - Appellee*

v.

City of St. Louis, Missouri

*Defendant*

Nellie Kuykendall, in her individual capacity; Eric B. Henry, in his individual capacity

*Defendants - Appellants*

———————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

———————

Submitted: April 15, 2021
Filed: August 5, 2021

———————

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

St. Louis police officers Nellie Kuykendall and Eric Henry (collectively, the Officers) responded to a call made by Jeffrey Just, who alleged that after running out

of gas and leaving his truck unattended, he returned to find a stranger (John Doe) rifling through his console. When the Officers arrived, John Doe informed them that Just threatened him with a knife. The Officers handcuffed Just and later, John Doe, ultimately releasing both men less than an hour later. Just then brought this action against the Officers, arguing that they violated his Fourth and First Amendment rights.[1] The district court denied the Officers' motion for summary judgment on the basis of qualified immunity, and the Officers filed this interlocutory appeal.[2] Having jurisdiction under the collateral order doctrine, we reverse.

## I.

On July 7, 2017, Just's truck ran out of gas near a St. Louis gas station, and, leaving his truck unattended, Just walked to the gas station to retrieve gasoline. When he returned, he found John Doe in his truck, rifling through its console. John Doe told Just that he entered the truck believing it to be his brother's and, realizing that it was not, exited the truck. Nevertheless, Just called 911 and reported this incident. John Doe left the scene. The Officers arrived approximately 30 to 45 minutes later. About the same time, a third party arrived,[3] who called John Doe back to the scene. The third party and John Doe relayed their version of events to the Officers, explaining that John Doe thought Just's truck was his brother's and that

---

[1]Appellee also brought a claim against the City of St. Louis. However, the district court dismissed that claim, and Just does not challenge that dismissal on appeal.

[2]The Officers filed this appeal on December 12, 2019, and shortly after, also on December 12, 2019, Just moved to dismiss the appeal for lack of jurisdiction. On February 11, 2020, this Court granted Just's motion to dismiss the appeal for want of an appealable order. However, the Officers filed a petition for rehearing by panel and for rehearing en banc on March 5, 2020. On May 12, 2020, this Court granted the Officers' petition for rehearing by panel, vacating this Court's February 11, 2020 judgment and denying the Officers' petition for rehearing en banc as moot.

[3]In their depositions, two of the three witnesses at the scene identify the third party as the brother or friend of John Doe.

Just had chased him while brandishing a knife.  The Officers verified that his brother's truck had been recently impounded.  Just denied having a knife or chasing John Doe.

The Officers said that Just and John Doe could leave.  John Doe left.  Just requested the Officers' names, explaining that he was upset they did not arrest John Doe.  As Just was taking Officer Kuykendall's name, Officer Kuykendall handcuffed Just and placed him in the squad car.  The Officers then conducted a pat down search of Just, looking for the knife that he allegedly brandished.  They did not find a knife on Just's person, and they did not search Just's truck.  The Officers then asked John Doe to return to the scene and placed him in handcuffs, too.  A St. Louis police sergeant arrived at the scene, and after some discussion, the Officers released Just and John Doe.  No charges were lodged against either Just or John Doe.

Following this incident and pursuant to 42 U.S.C. § 1983, Just brought a Fourth Amendment false arrest claim and a First Amendment retaliation claim against the Officers.  The Officers moved for summary judgment on qualified immunity grounds, and the district court denied the motion, finding that genuine issues of material fact precluded summary judgment.  The Officers now bring this interlocutory appeal.

II.

Just challenges our jurisdiction to review the district court's order denying summary judgment on qualified immunity grounds, and we therefore begin our analysis by considering our jurisdiction to conduct that review.  See Thompson v. Murray, 800 F.3d 979, 982 (8th Cir. 2015) ("The 'first and fundamental question' in an appeal from a denial of qualified immunity is that of jurisdiction." (citation omitted)).  "[A]n order denying qualified immunity is immediately appealable even though it is interlocutory; otherwise, it would be effectively unreviewable."  Jones v. McNeese, 675 F.3d 1158, 1160 (8th Cir. 2012) (alteration in original) (quoting Scott v. Harris, 550 U.S. 372, 376 n.2 (2007)).  "Although this [C]ourt cannot find

facts, it may determine whether the undisputed facts support the district court's legal conclusions. This [C]ourt views disputed facts most favorably to the plaintiff, including all reasonable inferences." Sok Kong v. City of Burnsville, 960 F.3d 985, 991 (8th Cir. 2020) (citations omitted). On interlocutory review, as here, we "cannot review whether a factual dispute is genuine," but we "may review the purely legal question whether a factual dispute is material." Id. Stated differently, while we lack jurisdiction to consider an argument that the plaintiff has proffered insufficient evidence to create a genuine issue of fact, see M.A.B. v. Mason, 960 F.3d 1112, 1114 (8th Cir. 2020) (per curiam), we have jurisdiction to consider an argument that the disputed facts to which the plaintiff cites are unable to affect the outcome of the suit, see Sok Kong, 960 F.3d at 991; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining that a fact is material if it affects the outcome).

The Officers assert the district court erred in denying them summary judgment because objective and uncontroverted facts—namely, that Just had an altercation with John Doe; John Doe voluntarily returned to the scene when the Officers arrived; John Doe accused Just of chasing him with a knife; and a third party confirmed that Just chased John Doe with a knife—established probable cause supporting Just's arrest. Ultimately, the Officers are not challenging the sufficiency of Just's evidence against them, see M.A.B., 960 F.3d at 1114, but rather are arguing that the disputed facts to which Just cites cannot affect the outcome of this suit, see Sok Kong, 960 F.3d at 991; Anderson, 477 U.S. at 248. Therefore, we have jurisdiction to review the district court's order denying summary judgment on qualified immunity grounds.

Finding that we have jurisdiction, we review de novo the district court's denial of summary judgment based on qualified immunity grounds. See Quraishi v. St. Charles Cnty., 986 F.3d 831, 835 (8th Cir. 2021). Qualified immunity is a shield from civil liability for officers whose conduct "does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (citation omitted). Determining whether an officer is entitled to qualified immunity necessitates the familiar two-step inquiry, asking if: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a

-4-

constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Bell v. Neukirch, 979 F.3d 594, 602 (8th Cir. 2020) (citation omitted). We may begin our analysis at—and resolve our analysis on—either prong. See Quraishi, 986 F.3d at 835 (may begin at either prong); Blazek v. City of Iowa City, 761 F.3d 920, 923 (8th Cir. 2014) (may resolve on either prong).

The district court explained that it was unable to evaluate Just's argument, determining whether the Officers did or did not have probable cause, because the parties disputed whether Just was arrested or merely detained and because the Officers failed to indicate what statute Just's arrest (or detention) was based on. It explained:

> The determination whether an officer has made an "objectively reasonable" mistake as to arguable probable cause is difficult, if not impossible, when the arresting officers cannot agree whether Just was arrested, the reason for the arrest, the timing, nor provide the state statute upon which Just's assumed arrest was based.

R. Doc. 71, at 10. However, the facts that the district court relied on when denying the Officers' motion for qualified immunity (i.e., whether Just was arrested or merely detained and what statute Just's arrest (or detention) was based on) do not influence the legal question the district court was tasked with answering: whether, at the time of Just's arrest, probable cause existed. In fact, whether Just was arrested or detained is not a factual dispute capable of defeating summary judgment; instead, it is a legal question within the province of the judge, not the jury. See, e.g., United States v. Mshihiri, 816 F.3d 997, 1003-04 (8th Cir. 2016) (reviewing de novo the district court's determination of whether the defendant was in police custody while reviewing all fact findings for clear error). Therefore, because the Officers could defeat Just's Fourth Amendment claim by showing that they had probable cause (or arguable probable cause), see Thurairajah v. City of Fort Smith, 925 F.3d 979, 983 (8th Cir. 2019) (explaining that a Fourth Amendment wrongful arrest claim is defeated where the arresting officer had probable cause), the question before us—a legal question, which we have the ability to resolve, see Odom v. Kaizer, 864 F.3d

920, 923 (8th Cir. 2017) ("Whether probable cause existed is a legal question . . . ." (citation omitted))—is whether such probable cause existed.

"Under the Fourth Amendment, a person has a right 'to be secure in [his] person[]' and warrants may not issue 'but upon probable cause.'" Ross v. City of Jackson, 897 F.3d 916, 920 (8th Cir. 2018) (alterations in original) (quoting U.S. Const. amend. IV). "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Bell, 979 F.3d at 603 (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "[A] constitutional violation occurs when there is a warrantless arrest that is not supported by probable cause to believe that a crime has been committed." Ross, 897 F.3d at 920. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. (citation omitted). "[P]robable cause is an objective standard . . . ." District of Columbia v. Wesby, 138 S. Ct. 577, 584 n.2 (2018). We afford officers "substantial latitude in interpreting and drawing inferences from factual circumstances," Bell, 979 F.3d at 603 (citation omitted), and even where the officers act on a mistaken belief that probable cause exists, if that mistake is "objectively reasonable," arguable probable cause exists and the officers are entitled to qualified immunity, Ross, 897 F.3d at 921 (citation omitted); see also Linn v. Garcia, 531 F.2d 855, 861 (8th Cir. 1976) ("It is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining to make the arrest."). "'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt' under state law." Ross, 897 F.3d at 920 (citations omitted). Therefore, we must first determine what state statute Just's arrest was based on. See id. We find that Missouri law forbidding assault in the fourth degree is most applicable here. See Mo. Rev. Stat. 565.056 subdiv. 1(3). Section 565.056 subdiv. 1(3) provides that "[a] person commits the offense of assault in the fourth degree if . . . [he] purposely places another person in apprehension of immediate physical injury."

In support of his Fourth Amendment claim, Just contends that the Officers had no probable cause to handcuff him. To demonstrate that the Officers lacked probable cause, he notes that: he called 911 (i.e., it is nonsensical that he would invite law enforcement to the scene if he had committed a crime); John Doe's version of events was not credible; and no charges were actually initiated against Just. Arguing that they had probable cause, the Officers rely on several uncontroverted facts: when the Officers arrived at the scene, they received narratives of the altercation from Just and John Doe; John Doe reported that Just had chased him with a knife; a third party confirmed John Doe's story; and the Officers found John Doe to be credible because John Doe voluntarily returned to the scene upon the Officers' arrival.

John Doe's and the third party's reports were sufficient to have provided probable cause to arrest Just for assault in the fourth degree under Missouri law. The facts that Just directs us to (i.e., that he called 911 and that John Doe was not credible) do not diminish the Officers' probable cause to believe, at the time of Just's arrest, that he had committed a crime. See Ross, 897 F.3d at 920; Bell, 979 F.3d at 603. Further, the fact that no formal charges were initiated against Just does not retroactively diminish the reasonableness of the Officers' belief. See Hosea v. City of St. Paul, 867 F.3d 949, 956 n.6 (8th Cir. 2017) ("Regardless of the ultimate offense charged, probable cause to arrest an individual exists if the facts known to the officer establish probable cause to arrest for *any* violation of the law."). In sum, the disputed facts cited by Just or by the district court are not capable of affecting the outcome of this suit and thus are not material questions of fact capable of defeating summary judgment. See Anderson, 477 U.S. at 248. Furthermore, even if the Officers were mistaken that probable cause existed, that mistake was "objectively reasonable" and arguable probable cause exists, entitling them to qualified immunity. See Ross, 897 F.3d at 921 (citation omitted) (explaining that this Court may resolve a qualified immunity analysis on the clearly established prong where arguable probable cause exists). Therefore, because we find as a matter of law that probable cause, or at least arguable probable cause, existed, see Quraishi, 986 F.3d at 836, and because we are permitted to resolve this qualified immunity analysis on either prong, see Blazek, 761 F.3d at 923, we conclude that the Officers

were entitled to qualified immunity. The district court thus erred in denying the motion for summary judgment based on qualified immunity.

We also find that the Officers were entitled to qualified immunity on Just's First Amendment retaliation claim. "To prove a constitutional violation, [Just] must show that he was arrested in retaliation for a protected speech activity." Thurairajah, 925 F.3d at 984. Such a showing consists of four elements: that the plaintiff engaged in protected activity, that the officer(s) "took adverse action . . . that would chill a person of ordinary firmness from continuing in the [protected] activity," that the adverse action was motivated by the plaintiff's protected activity, and that the officer(s) lacked probable cause or arguable probable cause. Id. at 984-85 (citation omitted). Like a Fourth Amendment claim for a wrongful arrest, a First Amendment retaliatory arrest claim is defeated by a showing of probable cause (or arguable probable cause). See Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.");[4] see also Quraishi, 986 F.3d at 836 (explaining that the lack of probable cause or arguable probable cause is an element of a First Amendment retaliatory arrest claim); Thurairajah, 925 F.3d at 985 (naming, as an essential element, the officer(s) lack of probable cause or arguable probable cause). Because we have already concluded that the Officers had probable cause, or at least arguable probable cause, to arrest Just and because such a finding defeats a First Amendment retaliatory arrest claim, see Quraishi, 986 F.3d at 836; Thurairajah, 925 F.3d at 985, we find that qualified immunity was also appropriate on Just's First Amendment claim and the district court erred by denying that immunity.

---

[4]In Nieves, the Supreme Court created "a narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." 139 S. Ct. at 1727. The Supreme Court "conclude[d] that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. Just presents no such evidence, and we find that Nieves's "narrow qualification" is inapplicable here.

## III.

For the foregoing reasons, we reverse.

_____